## Lewis Heck, Plff. in Err., v. Eugene Borda.

A lease of an iron property, which was to continue as long as a royalty of $1,000 a year was paid, and which gave the lessor the option to terminate the lease upon the nonpayment of the royalty, and further contained a provision for expending 25 per cent more than the first year's royalty in putting the furnace in working order, is a lease from year to year and not a lease at will.

In an action upon a covenant in such a lease, it was error for the court below to grant a nonsuit on the ground that it was a lease at will and that the tenant, before breach, had assigned his interest; the case should have been submitted to the jury on the evidence tending to prove breach of covenant.

(Decided October 4, 1886.)

Error to Common Pleas No. 3 of Philadelphia County to review a judgment of compulsory nonsuit. Reversed.

This was an action of covenant brought by Lewis Heck, the lessor, against Eugene Borda, the lessee, for a loss by fire. The claim is based on the two following covenants:

"Should this lease terminate from any cause, the said party of the second part agrees to leave the property in as good condition as when put in blast, wear and tear excepted."

"In case of stoppage, the party of the second part agrees to furnish a watchman, or protect the property by insurance."

The material provisions of the lease are set out fully in the opinion.

The lessee, Borda, remained in possession under the lease until 1882, when he transferred the lease to Knotwell who went into possession, and afterward, on May 11, 1882, the furnace property was injured by fire. Whereupon this suit was brought on the above covenants.

It was conceded that the fire took place during a "stoppage" and that there was no insurance, and there was some evidence that no watchman had been employed by the defendant.

The defendant, at the conclusion of the plaintiff's testimony,

NOTE.—Under a similar lease, where no annual rental is reserved, but a royalty is to be paid for each ton of ore mined, the question as to whether the tenancy was at will, or a lease from year to year, was held to be for the jury. Moore v. Miller, 8 Pa. 272.

moved for a compulsory nonsuit, on the ground that the lease created an estate at will only and that the assignment prior to the fire put an end to it. The nonsuit was granted and subsequently the court in banc refused to take it off. Plaintiff took this writ, assigning for error this action of the court.

*J. Howard Gendell,* for plaintiff in error.—It may be conceded that an estate at will is so infirm in its nature that it cannot be assigned, but an assignment with notice to the landlord puts an end to it. But this rule applies only to estates at will of the simplest kind; that is, to those which are absolutely terminable at any time, at the mere will or caprice of either party, without prior notice, according to the definition in Co. Litt. 55 a.

Any strengthening whatever of the tenant's estate will give him an interest which can be assigned. No one, for instance, doubts the assignability of an estate from year to year. Taylor, Land. & T. § 58; 4 Kent, Com. 114.

There is nothing in the words of the lease or in the mode of creating the estate to prevent it being an estate for life. The words, "lease," "lessor," "lessee," "demise," "grant," etc., etc., apply to estates for life as well as to those for years, etc. 2 Bl. Com. 317, 318; Litt. 57 (Co. Litt. 42 b.)

Where no definite term is mentioned, the grant is construed to convey the largest estate possible; *i. e.,* where there are no words of inheritance, an estate for life. 2 Bl. Com. 120, 121; 4 Kent, Com. 25; Taylor, Land. & T. § 52.

Every indefinite estate is an estate for life, although it may terminate earlier, even if the termination is by the act or default of the lessee. This rule is quoted in all the text books, from 2 Bl. Com. 121; Co. Litt. 42 a.

Among the examples of life estates given by Coke (*supra*) are these—"If a man grant an estate to a woman *dum sola fuit,* or *durante viduitate,* or *quamdiu se bene gesserit,* . . . or so long as the grantee dwell in such a house, or as long as he pay £10, . . . or for any like *incertaine* time, which time, as Bracton saith, is *tempus indeterminatum.*"

"If a man make lease of a manor that at the time of the lease is worth £20 *per annum* to another, until £100 be paid, in this case, because the annual profits of the manor are *incertaine,* he hath an estate for life."

This passage from Co. Litt. is cited as law in all the text books. Woodfall, Land. & T. 5th London ed. 1843, 70; Taylor, Land. & T. § 53; Wood, Land. & T. § 56; 4 Kent, Com. 26; Bissett, Estate for Life, 7; Cruise, Real Prop. 106, §§ 6–8; 1 Washb. Real Prop. 88, 89.

Our case falls within the very words·of one of the examples given. The estate was to continue as long as the lessee paid a certain sum.

A lease to a tenant as long as he may desire to use the house for a drug store creates an estate for life, determinable by failure to use it. Thomas v. Thomas, 17 N. J. Eq. 356.

So, a lease during the time that salt works should be erected and used on the land creates an estate for life, subject to be defeated. Hurd v. Cushing, 7 Pick. 169.

The introduction of words of inheritance would make the estate a fee simple determinable. A demise to A. B., his heirs and assigns, for such time as he pays rent, etc., is a perpetual lease. On default, the lessor only, and not the lessee, may elect to consider it forfeited. Folts v. Huntley, 7 Wend. 210.

A lease for 100 years, with provision that the lessee, his heirs and assigns, may hold the premises so long as he and they shall think proper after the expiration of the term, at the same rent, is not determinable by the lessor after the end of the term; at least not without making compensation for improvements. Lewis v. Effinger, 30 Pa. 281, 286.

If we are wrong respecting the life interest, this is at least an estate from year to year, and therefore assignable. Taylor, Land. & T. § 58; 4 Kent, Com. 114.

At this day tenancy at will cannot arise without express grant or contract. All general tenancies  .  .  .  are by implication and constructively from year to year. 2 Preston, Abstracts of Title, 25.

There are no express words in this lease reducing the term from such an estate to one at will only. The presumption is that it is from year to year. Wood, Land. & T. § 22, p. 66.

A tenancy at will exists only nominally, and is, in fact, a tenancy from year to year. Logan v. Herron, 8 Serg. & R. 473; Clark v. Smith, 25 Pa. 137.

In no authority is the rule stated weaker than in Taylor's Landlord & Tenant, §§ 55, 59, and 61, in which it is said in substance that if any circumstances, payment of rent or other-

wise, appear referable to an annual holding, the term is from year to year, and not at will.

Certain cases in Massachusetts were cited by the defendant in the court below. These are not authority, for in Massachusetts and Maine there is no tenancy from year to year. Taylor, Land. & T. § 61.

It is admitted to be a breach of the covenant to restore in good condition, unless that covenant is affected by a subsequent clause. Hoy v. Holt, 91 Pa. 88, 36 Am. Rep. 659.

That subsequent clause, "In case of destruction by fire or storm, necessitating the stoppage of the furnace, the repairs of the same will be a matter of mutual agreement," being an independent covenant, it neither supersedes, qualifies, nor restricts the prior covenant. A covenant to repair is neither superseded, nor qualified, nor restricted as to amount by a covenant to insure for a specified amount. Digby v. Atkinson, 4 Campb. 275.

The covenant to furnish a watchman or protect by insurance was also broken. The burden of proof of compliance with this covenant was on defendant. Where a matter is peculiarly within the knowledge of the other party, he must prove it. Greenl. Ev. §§ 74, 79.

*Crawford & Dallas,* for defendant in error.—"Leases for an uncertain time are prima facie leases at will." Wood, Land. & T. ed. 1881, p. 32.

"A person who goes in under an agreement that he may occupy . . . until a certain contingency happens, and generally, without stopping to recapitulate all the special instances in which a tenancy at will may arise, it may be said that in all cases, where a person enters into the possession of the premises of another by his permission, no definite term of occupancy binding upon the parties being agreed upon, he is a mere tenant at will, and this, too, irrespective of the question whether he occupies rent free, or pays rent therefor." Id. pp. 33, 34.

"In order to create a tenancy into a tenancy for an uncertain period from year to year, there must be a reservation of annual rent; and unless there is such a reservation, the tenancy is prima facie only a tenancy at will." Id. pp. 34–6.

"The courts latterly are inclined to construe all leases at will at an annual rent, as leases from year to year. But when the lease in terms creates only a tenancy at will, the fact that rent is

reserved, and paid in pursuance of such reservation, does not change the character of the tenancy. The intention of the parties if clearly expressed will control." Id. pp. 37–8, referring to Doe *ex dem.* Bastow v. Cox, 11 Q. B. 122, where the court held that the meaning of the reservation is that the tenant shall pay at such rate during the time for which he may occupy.

The reservation of a yearly rent is not inconsistent with a tenancy at will. Doe *ex dem.* Dixie v. Davies, 7 Exch. 89; Co. Litt. 556; Walker v. Giles, 6 C. B. 662.

In Murray v. Cherrington, 99 Mass. 229, a written lease of a house at a certain annual rent for a term to begin when said house is suitable for occupancy by the lessee, and undefined in duration, except by a stipulation that if, after two years from the time when the lessee should move in, the lessor should wish to live there, he might do so, and the lessee might then retain, if he should desire, certain rooms "for such term as may be agreeable to us both," was held to create only a tenancy at will, and the provision respecting the two years was held not to change that construction.

This lease was in writing, and it is only parol leases that are by statute made leases at will only, in Massachusetts, where leases from year to year do exist. The plaintiff in error is in error in stating that there is no tenancy from year to year there. See the references to his citation of Taylor, Land. & T. p. 61; Ashley v. Warner, 11 Gray, 43. See also Gardner v. Hazelton, 121 Mass. 494; Say v. Stoddard, 27 Ohio St. 478; Lewis v. Effinger, 30 Pa. 281–285; and Effinger v. Lewis, 32 Pa. 367.

It is the lessee's will which was exercised here, so that it is not material to consider the effect of the will of the lessor.

The suggestion that if the tenancy were at the will of the lessee, by the old law it must also be at the will of the lessor (Wood, on Landlord & Tenant, page 31, and references there), and therefore the lessor could, after the lessee had made large expenditures for material, terminate the lease to the lessee's great injury, is an error, as in Pennsylvania a lease at the will of the lessee would not have that consequence. Lewis v. Effinger and Effinger v. Lewis.

If it were a license merely, revocable at will, if on the faith of it the licensee had made large expenditures, the licensee would have an equity against revocation without compensation, an estoppel founded on equity only, not a common-law term of years

under a lease, although such a lease or license would still be at the will of the lessee or licensee.

It is not disputed that a tenant at will may end his tenancy at any time he pleases, *instanter,* and without notice. And any act of the tenant declaring it at an end, or inconsistent with his tenancy, as by assignment and notice thereof to his landlord, will terminate it. Wood, Land. & T. pp. 47, 49.

And the defendant's letter of May 11, 1882, one year before the fire, declared both his termination of his own tenancy and his assignment to Knotwell.

Notwithstanding the prevalent theory that the general rule is well expressed by saying that the burden of proof lies on the party who asserts the affirmative of the issue, yet the true view is that the burden is upon the party undertaking to prove a point. Whether the party desiring the judgment of the court asserts an affirmative or a negative proposition, on him lies the burden of proof. And such is the Roman law. Wharton, Ev. 2d ed. §§ 353–355.

Whenever the plaintiff bases his action on a negative allegation, the burden is on him to prove such allegation. Id. note 1, p. 303; Id. § 357, and cases referred to; 1 Phillipps, Ev. *812; Amos v. Hughes, 1 Moody & R. 464; Millis v. Barber, 1 Mees. & W. 427; Peck v. Houghtaling, 35 Mich. 127. See also Soward v. Leggatt, 7 Car. & P. 615; Belcher v. M'Intosh, 8 Car. & P. 720; Osborn v. Thompson, 9 Car. & P. 337; Shilcock v. Passman, 7 Car. & P. 291; Bell v. Reed, 4 Binn. 127, 5 Am. Dec. 398; Chambers v. Jaynes, 4 Pa. 39; Sartwell v. Wilcox, 20 Pa. 117; Hubbard v. Wheeler, 17 Pa. 425; Patterson v. Juniata Bank, 4 Watts & S. 42.

OPINION BY MR. JUSTICE STERRETT:

This action of covenant by lessor against lessee, for damages by fire, is based on the two following covenants in the lease, *viz.:* 1. "Should this lease terminate from any cause the said party of the second part agrees to leave the property in as good condition as when put in blast, wear and tear excepted." 2. "In case of stoppage the party of the second part agrees to furnish a watchman, or protect the property by insurance."

The lease under seal, dated January 17, 1882, was duly executed, acknowledged, and recorded. After describing the demised premises, consisting of about 15 acres of land on which

were erected a blast furnace and other buildings used in connection therewith, the lease provides as follows: "This lease or grant to continue as long as the said party of the first part receives a revenue of no less than $1,000 a year royalty on account of iron made, or on account of iron to be made; and the said party of the first part further agrees that he will at any time within three years of this date sell and convey by good and sufficient warranty deeds all of the above-described property for the sum of twenty thousand dollars ($20,000) payable, etc. . . .; and the party of the first part further agrees that he will allow one half of the expense of putting the furnace in working condition; provided, however, that his half shall not exceed $1,250." In consideration thereof the lessee agrees to pay "50 cents per ton of 2,268 pounds for each and every ton he may make at said furnace. Payments to be made at the furnace office on or before the 15th day of each month."

"The amount to be expended in putting the furnace in working order (the half of which as hereinbefore stated is not to exceed $1,250) is to be paid out of the first accruing rent."

"It is also expressly understood that in case the party of the second part fail to pay to the party of the first part a royalty of at least $1,000 per year, this lease shall at the option of the party of the first part become null and void."

If the lease gave defendant no greater interest in the premises than a mere tenancy at will, it must be conceded that the judgment of nonsuit was rightly entered; but, on the other hand, if it vested in him at least a tenancy from year to year, as we think it did, the case should have been submitted to the jury on the evidence tending to prove the breaches of covenant declared on. It is unnecessary to refer to the evidence tending to sustain the breaches assigned. Suffice it to say, the testimony on that subject is quite sufficient to have warranted its submission to the jury.

The provisions of the lease above quoted clearly show it was intended to create at least a tenancy from year to year. It is to continue as long as the royalty of $1,000 a year is paid. The express authority to terminate the lease in the event of nonpayment of the minimum annual royalty tends also to exclude the inference of power to terminate it at will. It cannot be an estate at will unless terminable at the will of either party. The provision of expending 25 per cent more than the first year's mini-

mum royalty in putting the furnace in working order also shows conclusively that the tenancy at will was not contemplated by the parties. The lease given in evidence should have been construed to be a lease from year to year, and the case should have been submitted to the jury on the evidence tending to prove breaches of covenant on the part of the lessee.

Judgment reversed and a *procedendo* awarded.