

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-26-2004

# Ruiz v. New Garden Twp

Precedential or Non-Precedential: Precedential

Docket No. 02-4434

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Ruiz v. New Garden Twp" (2004). *2004 Decisions.* Paper 431.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/431

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF
APPEALS
FOR THE THIRD CIRCUIT

———————

No. 02-4434

———————

GUILERMINA RUIZ; RODOLFO
VILLAGOMEZ; ANTONIO LOPEZ;
ANTONIO ORTIZ; RAFAEL LUNA;
ANGELICA SANCHEZ;
JOSE J. PADRON; and J.
GUADALUPE LOPEZ

v.

NEW GARDEN TOWNSHIP; ROBERT
N. TAYLOR, III; WILLARD H.
SMEDLEY;
PATRICK J. KENNEY; NORMAN S.
NUNN; FRANK J. ZAGORSKIE;
THE ZONING HEARING BOARD OF
NEW GARDEN TOWNSHIP;
DAVID CARLIN; ANGELO ZUNINO;
JAMES DILUZIO,
           Appellants

DANTE DIUBLADO; LUCY M.
DIUBLADO, (Intervenors in D.C.)

———————

On Appeal from the United States
District Court
for the Eastern District of Pennsylvania

(Civil Action No. 01-CV-5081)
District Judge: Hon. Anita B. Brody

Argued: December 15, 2003

Before: ROTH, McKEE, and ROSENN,
Circuit Judges.

(Opinion Filed:   July 26, 2004)

ARTHUR W. LEFCO, ESQ. (Argued)
JAMES W. GICKING, ESQ.
Marshall, Dennehey, Warner, Coleman
& Goggin
1845 Walnut Street, 17th Floor
Philadelphia, PA 19103-4717
Attorneys for Appellants

ROBERT F. SALVIN, ESQ. (Argued)
Community Impact Legal Services, Inc.
419 Avenue of the States
Crozer Building, Suite 201
Chester, PA 19013
Attorney for Appellees

———————

OPINION OF THE COURT

———————

McKEE, Circuit Judge.

    We are asked to review an order of
the district court enjoining New Garden
Township   and   its   employees   ("the

Township") from enforcing a zoning enforcement notice that would have resulted in the eviction of plaintiff tenants.[1] The plaintiffs requested the injunction pursuant to 42 U.S.C. § 1983 arguing that the Township had violated their Fourteenth Amendment right to procedural due process in failing to notify them of a zoning hearing into whether their landlord was violating certain zoning ordinances by allowing mobile homes on property not zoned for residential use. We agree that plaintiffs have not established a procedural due process violation, and we will therefore reverse.

## I. FACTS AND PROCEDURAL HISTORY

Since the 1990s, plaintiffs Guillermina Ruiz, Rodolfo Villagomez, Antonio Lopez, Antonio Ortiz, Rafael Luna, Angelica Sanchez, Jose J. Padron and J. Guadalupe Lopez have been tenants in mobile homes located at 320 Ellicott Road in New Garden Township, Pennsylvania. Since 1989, that property has been designated as a C-I-2 Limited Commercial Industrial District.[2]

The plaintiffs paid rent in the amount of $500 to $600 per month pursuant to oral leases with Dante and Lucy DiUbaldo.[3] It is uncontested that DiUbaldo agreed that at least one of the tenants could remain on the property for up to three years and that DiUbaldo would decide how long the tenant would have to vacate the property if he decided to leave.

On June 22, 2000, the Township issued an enforcement notice citing DiUbaldo for violations of the township's zoning ordinance. The violation resulted from the presence of the plaintiffs' mobile homes on the property located at 320 Ellicott Road. The zoning notice was issued because the light industrial zoning designation of that property did not allow the property to be used as a trailer park.[4]

---

[1] The defendants also ask us to reverse the district court's decision to deny its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and order that the action be dismissed with prejudice. The record before us regarding the disposition of the motion to dismiss is unclear. The district court mentions it in its opinion in support of issuing the permanent injunction but does not explicitly state that it denied the motion or explain why it denied the motion. Nor does the motion appear on the district court docket included in the record on appeal. As a result, we feel that the district court would be better equipped to revisit its decision and the state of this claim on remand.

[2] The property contains "mushroom houses."

[3] We will refer only to Mr. DiUbaldo in the rest of the opinion because he managed the property.

[4] The property became part of the C-I-2 Limited Commercial Industrial District when it was re-zoned in 1989, but had been zoned as residential beforehand.

2

The notice required DiUbaldo to begin removing the mobile homes within 10 days and to complete the process within 45 days. The notice also informed him that he could appeal the enforcement action to the New Garden Township Zoning Hearing Board ("ZHB").

DiUbaldo did appeal, and hearings were held on November 15 and December 13, 2000, before the ZHB. None of the tenants participated in that appeal although notice of the hearings was apparently posted on the Ellicott Road property. The ZHB denied DiUbaldo's appeal on January 22, 2001, but it altered the terms of the aforementioned enforcement order. DiUbaldo was ordered to give the tenants notice to quit the property by March 1, 2001 and he was ordered to remove the mobile homes by July 2001.[5]

As instructed, DiUbaldo served the notices to quit on the tenants around March 1, 2001. Plaintiff Lopez testified that this was when he first learned that the Township was enforcing the zoning ordinance and the effect it would have on him. Plaintiff Luna testified that he did not learn of the situation until after the hearing. Despite the notice to quit, the tenants failed to vacate the property by July 2001, and DiUbaldo thereafter initiated eviction proceedings against them. As a result of those proceedings, a local magistrate eventually ordered the plaintiffs' eviction.

The tenants then filed this action in the U.S. District Court for the Eastern District of Pennsylvania seeking to enjoin the ZHB's order requiring DiUbaldo to serve them with notices to quit. They argued that, given their property interest, they were entitled to notice of the proceedings before the ZHB. They claimed that the Township's failure to notify them of those hearings violated their right to procedural due process under the Fourteenth Amendment.[6] As we noted at the outset, the district court agreed and granted a permanent injunction. This appeal followed.

## II. JURISDICTION AND STANDARD OF REVIEW

---

[5] Although DiUbaldo served the notices to quit on the plaintiffs pursuant to the enforcement notice that issued after he lost his appeal before the ZHB, he also filed a conditional use application with the New Garden Board of Supervisors. At the hearings before the Board of Supervisors, he argued that the mobile homes were a permissible expansion of a pre-existing nonconforming use because one of the mobile homes was placed on the property before 1989 when the property was re-zoned. It is undisputed that the tenants were properly given notice of these hearings, and that some of them attended the hearings. The Board of Supervisors denied his application.

[6] They also argued that some of the procedural safeguards that due process required were codified in the hearing notification guidelines at 53 Pa. Stat. Ann. § 10616.1 (2003).

3

The district court's final order granting a permanent injunction is appealable under 28 U.S.C. § 1291. *Ameristeel Corp. v. Int'l Bhd. of Teamsters*, 267 F.3d 264, 267 (3d Cir. 2001). We have jurisdiction over the section 1983 claim under 28 U.S.C. § 1331, and we have supplemental jurisdiction over concomitant state law issues under 28 U.S.C. § 1367. "We review a district court's decision to grant or deny a permanent injunction under an abuse of discretion standard. However, because an abuse of discretion exists where the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact, we apply plenary review to the District Court's legal conclusions." *Ameristeel*, 267 F.3d at 267 (internal quotation marks and citations omitted).

### III. DISCUSSION

In order to satisfy the requirements for a permanent injunction, plaintiffs must establish that they will ultimately succeed on their claim. *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001). In order to prevail on their section 1983 claim, plaintiffs must establish that persons acting under color of law deprived them of a protected property interest without due process of law. *Midnight Sessions et al. v. City of Philadelphia*, 945 F.2d 667, 680 (3d Cir. 1991).

State law defines property interests for purposes of procedural due process claims. *See Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). The parties agree that, under Pennsylvania law, leaseholders have the same right to possession of real estate as an owner during the term of the lease. The district court found that the plaintiffs had a protected property interest in the form of oral month-to-month leases because the conduct between the parties established that the plaintiffs each had a month-to-month lease. However, we hold that, even if plaintiffs did establish a protected interest based upon their leasehold estates, they were nevertheless not denied procedural due process because the procedure utilized by the ZHB was not constitutionally infirm.

"In Pennsylvania, if the landlord and tenant have failed to specify a definite period of time for the lease to continue, the court may imply the type of tenancy indicated by the conduct of the parties." RONALD M. FRIEDMAN, PA. LANDLORD-TENANT LAW AND PRACTICE § 1.10 (3d ed. 2004). The tenants were required to pay about $500 to $600 monthly, and such monthly rental payments generally support the existence of a month-to-month tenancy. *See* RESTATEMENT (SECOND) OF PROPERTY § 1.5 (2003) ("Where the parties enter into a lease of no stated duration and periodic rent is reserved or paid, a periodic tenancy is presumed. The period thus presumed is equal to the interval for which rent is reserved or paid to a maximum periodic tenancy of year to year.").

However, "[t]he presumption that a periodic tenancy is intended may be rebutted by language or circumstances

4

showing a contrary intent." *Id.* The record here contains unchallenged evidence that the plaintiffs could terminate their leases at any time, and that DiUbaldo would then decide how long tenants had to vacate their premises following such termination. Thus, the landlord or tenant could end the tenancy abruptly at any time even though the rent was calculated and paid monthly. Since the tenancies were "for an uncertain or indeterminate term which is terminable at the volition of either landlord or tenant," plaintiffs arguably had interests analogous to tenancies at will rather than month-to-month tenancies. P.L.E. 2d LANDLORD AND TENANT § 74.[7] Although the tenants paid rent on a monthly basis, there is no evidence that the plaintiffs and DiUbaldo explicitly agreed to month-to-month leases, and the district court does not explain how it concluded that these were month-to-month leases as opposed to tenancies at will.

However, since the Township now agrees that tenants had month-to-month leases, we will proceed as if they did. *See* Brief at 23 ("as month-to-month tenants, plaintiffs had no legitimate expectation to continued possession of property . . .").[8] Moreover, under Pennsylvania law, *any* tenancy creates a property interest. *Berrios v. City of Lancaster*, 798 F. Supp. 1153, 1157 (E.D. Pa. 1992) (stating that Pennsylvania law regards any lease as a property interest); *see also Ward v. Downtown Dev. Auth.*, 786 F.2d 1526,

---

[7] *See Heck v. Borda*, 6 A. 392, 393 (Pa. 1886). There, the Pennsylvania Supreme Court reversed a trial court's holding that a lease established a tenancy at will, finding instead that the lease established a year-to-year tenancy. The *Heck* Court found that the parties intended to create a tenancy from year-to-year because the written lease stated that the tenancy would last as long as a yearly royalty was paid. *Id.* Because the lessor had express authority to terminate the lease in certain events, the court believed this authority tended "to exclude the inference" that both parties had the power to terminate it at will, which is a necessary element of a tenancy at will. *Id.* The court also held that a provision requiring the landlord to spend a certain amount to put the property in working order further established that the parties did not intend to create a tenancy at will.

*Id.* Although the leases here also include a periodic payment of rent, they expressly provide that either party can terminate them at any time. Unlike the lease in *Heck*, they do not limit the right to abruptly terminate to only one party, nor do these oral leases have any terms suggesting that a future relationship is expected. The lease in *Heck* required the landlord's investment in the leased property.

[8] The plaintiffs also argue that their leases were year-to-year, but this argument is waived because the plaintiffs raised it for the first time on appeal. *See Gass v. V.I. Telephone Corp.*, 311 F.3d 237, 246 (3d Cir. 2002).

1529 (11th Cir.) (discussing how Florida law makes any tenancy a compensable property interest for purposes of Fifth Amendment public takings).

However, the plaintiffs' property interest here is tenuous at best because any such interest appears to have been created in violation of a zoning ordinance. *Cf. Puleo v. Zoning Hearing Board of Schuykill Township*, 722 A.2d 789 (Pa. Commw. 1999) (holding that property owners could not retain a structure on their property because they built the structure in violation of a zoning ordinance and another municipal ordinance).[9]

However, given the facts here, we need not decide whether plaintiffs had a cognizable property interest because even if they did, it is clear that they had no reasonable expectation of *future* occupancy beyond the period which the landlord might agree to in the event of termination.[10] As noted, that period was undefined and left completely to the discretion of the landlord. However, Pennsylvania law requires that tenants be given at least 30 days' notice of termination. 68 Pa. C.S.A. § 250.501(c) (2001). Accordingly, it appears that the tenants could reasonably expect no more than present enjoyment of their leased premises and 30 days additional occupancy upon notice that their landlord decided to terminate any of their leases. *See Ward*, 786 F.2d at 1529 (stating in dicta that legally sufficient notice to vacate would terminate a tenant's interest as of the end of the notice period).[11]

---

[9] Judge Rosenn's analysis begins with the conclusion that "[i]t is undisputed that neither the landowner nor the plaintiff-renters have complied with any of [the applicable zoning] codes." Concurring Op. at 3. It then proceeds governed by the principle that "the unlawful occupation of the rental property by the plaintiff-renters has vested no property right in them." *Id*. at 5 (citing *Puleo*). However, the plaintiff-renters are complaining that they had no opportunity to appear at the zoning hearing that found their property to be in violation and therefore could not defend against that allegation. Inasmuch as it appears that the trailers in question are the only homes the plaintiffs have, their interest in defending against the violations was at least as strong as that of DiUbaldo, the absentee owner. Accordingly, an analysis that begins and ends with charging the plaintiffs with the

outcome of the zoning hearing does not adequately respond to the legal challenge implicit in plaintiffs' appeal.

[10] *Cf. U.S. v. Petty Motor Co.*, 327 U.S. 372 (1946). *Petty* held that a tenant can not have an expectation to remain on property following condemnation for public use given an express term in the lease to relinquish all rights upon such condemnation. *Id*. at 376.

[11] The tenants in *Ward* had a protected property interest beyond that period of notice and, based on that, a right to procedural due process because the state

6

The ZHB ordered DiUbaldo to notify the tenants of its ruling by March 1, 2001, and to remove the mobile homes from the property by July 1, 2001. Thus, from the time the tenants first heard of the necessity of leaving the premises, they had four months to depart. Their claimed property interest, however, entitled them to only 30 additional days of tenancy after the notification by the landlord of termination of the lease. Thus, the actions of the ZHB could not have deprived the tenants of any property interest to remain on the premises. In fact, the ZHB ruling gave the tenants more notice of termination than they would otherwise have been entitled to. Accordingly, there could not have been an unconstitutional taking of a protected property interest.[12]

---

agency that acquired the property and displaced the tenants did not meet the "conditions set forth in the legislative grant of its authority," including holding hearings on the hardship that the tenants would endure if they were displaced. *Id.* at 1532.

[12] At oral argument, the plaintiffs cited *Schuykill Township v. Overstreet*, 454 A. 2d 695 (Pa. Commw. Ct. 1983), as support for its contention that plaintiffs' leases entitled them to be present at the ZHB hearing. But *Overstreet* held only that tenants had to be joined in an action to enforce an already-issued order terminating their rights to possess the rental property. *Id.* at 695-96. It says nothing about whether the tenants had a right to be present for

## C. Notice

Because the plaintiffs were not deprived of a protected property interest in their leases, the Constitution did not mandate that they receive notice of the hearing before the ZHB, and the district court's conclusion to the contrary can not stand.

The plaintiffs also argue that the Pennsylvania Municipalities Planning Code ("MPC") gives them a right to notice. However, we are not persuaded. The MPC requires localities to send an enforcement notice to "the owner of record of the parcel on which the violation has occurred, to any person who has filed a written request to receive enforcement notices regarding that parcel, and to any other person requested in writing by the owner of record." 53 Pa. Stat. Ann. § 10616.1 (2001). A lessee is treated as an owner under section 10616.1 only "if he is authorized under the lease to exercise the rights of the landowner" or otherwise has a proprietary interest in the land. 53 Pa. Stat. Ann. § 10107 (2001). The plaintiffs meet none of these conditions precedent to

---

the determination of their right to continued possession of a rental property that was violating zoning ordinances. *Cf. City of New Orleans v. Buffa*, 69 S.2d 140, 140-41 (La. App. 1953) (bringing an action against landlord and tenant to enjoin the tenant's use of the premises in violation of city zoning ordinances; this case was also cited by the plaintiffs at oral argument).

7

getting notice under section 10616.1. There is nothing in the record even suggesting that they were authorized to exercise the DiUbaldos' rights as property owners, that they had anything remotely resembling a proprietary interest in the property, or that the DiUbaldos requested that they receive notice of zoning violations. Therefore, the district court properly held that the MPC did not mandate that plaintiffs be given notice of zoning violation enforcement. However, the court went further and concluded that the MPC was unconstitutional as applied because it did not mandate notice to the plaintiffs. We have already explained why plaintiffs are not constitutionally entitled to notice. Accordingly, we must reverse the district court's ruling that the MPC is unconstitutional as applied to them.[13]

## IV. CONCLUSION

For all of the above reasons, we will reverse the district court's order granting a permanent injunction.

---

[13] In doing so, we do not suggest that we are insensitive to the situation of the plaintiffs. It appears from everything on this record that these tenants are migrant farmers with few if any alternatives to the plight in which they found themselves.

ROSENN, Circuit Judge, Concurring.

I concur in the judgment reversing the District Court's decision. I write separately, however, because I cannot agree with the majority's analysis based on an assumption that the plaintiffs have a protected property interest. I also believe due process analysis is unnecessary to the disposition of this case.

I.

Where, as here, there is a claim of an alleged deprivation of property without due process, a two-part inquiry is required. Kovats v. Rutgers, 749 F.2d 1041, 1047 (3d Cir. 1984), cert. denied sub nom. Varma v. Bloustein, 489 U.S. 1014 (1989) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1981)).

> The first question is whether the plaintiff[s] [were] deprived of a protected property interest. Property interests, while protected by the [United States] Constitution, are not created by the Constitution. "Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Board of Regents v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L.Ed.2d 548

8

(1972); see also Leis v. Flynt, 439 U.S. 438, 441, 99 S. Ct. 698, 700, 58 L.Ed.2d 717 (1979). The definition of property, therefore, may turn in some cases on a question of state law. If a property interest is found to exist, the second question—what process is due—is a matter of federal law. Memphis Light, Gas & Water Division v. Craft, 436 U.S. 1, 98 S. Ct. 1554, 56 L.Ed.2d 30 (1978); see Logan, 455 U.S. at 432, 102 S. Ct. at 1155.

Kovats, 749 F.2d at 1047. However, "[i]f there is no property interest, there can be no valid due process claim." Id.

Where, as here, it is undisputed that a residential rental use of the property at issue was set up by the landowner in violation of state, county, and municipal laws, such use was null and void ab initio under Pennsylvania law. The landowner had acquired no vested property interest in his unlawful rental use of the property. The plaintiff-tenants, whose interest was derivative and at most coextensive with the landowner's interest, had acquired no vested property interest either in the same rental use of the property. Where there is no property right, there can be no viable due process claim as a matter of law.

Where the plaintiffs' due process claim fails as a matter of law under the first part of the two-part inquiry set forth in Logan, 455 U.S. at 428, which is a matter of state law, the second part of what process is due, or not due, which is a matter of federal law, is irrelevant. Where the plaintiffs' claim can be adjudicated as a matter of state law, we should not engage in any unnecessary constitutional due process analysis. Neese v. Southern Railway Co., 350 U.S. 77, 78 (1955).

The record in this case establishes that the landowner unlawfully installed the eleven mobile homes/trailers, without having obtained the required permits from the state, county, and municipal authorities and in violation of state and local (zoning) laws. These laws and ordinances were enacted to promote the health, welfare, and safety of not only the tenants, but also the general public in the community. For instance, the sewage permits are intended to protect the public against diseases. The issue, overlooked by the District Court and the parties in dispute, is whether a private rental arrangement between the landowner and the plaintiffs executed and operated in violation of state and local laws can ever give rise to constitutionally protected property interests.[14] We consider the issue sua sponte because of the "traditional practice of . . . refusing to decide constitutional questions when the record discloses other grounds of decision, whether or not they have been properly raised . . . by the parties." Neese, 350 U.S.

_____

[14] The Township's briefs, particularly its reply brief, have touched on the issue, but failed to develop its argument.

9

at 78.

It is not disputed that the Zoning Hearing Board found, following a hearing attended by the landowner, that he had violated local zoning laws and the state statutes regarding health, safety, and real estate regulation in installing the mobile homes/trailers and that the landowner did not appeal the decision. The Board's findings of violations are conclusive now. The Township asserts that it had placed valid zoning restrictions at least a decade before any of the eleven mobile home/trailers were placed on the land at Elliot Road, New Garden Township, Pennsylvania, which precluded the present residential use by the plaintiffs. Even if assuming that the owner had obtained a variance for residential use of his land, which is not the case here, residential use of his land would still have required the landowner to prepare a land development plan, obtain a conditional use permit, sewage and other permits required by the Township ordinances for any residential development before the owner could lease his property and the plaintiffs could occupy the property.

The Township solicitor testified in the District Court, and it is undisputed, that before the mobile homes were placed on the property, the owner had not obtained the required "sewage permit from the County Health Department for that mobile home park." He also testified that installation of a sewage system would interconnect with the township sewer plant, as required. He further stated that the Township required a use and occupancy permit before the owner could install the mobile home/trailers on his property and rent them to the plaintiffs. The Township solicitor testified also that the owner was required to comply with the state and county health and safety codes governing uses of electrical and construction anchoring. It is undisputed that neither the landowner nor the plaintiff-tenants have complied with any of those codes. Nor have they applied for and obtained any health and safety permits necessary for the residential use of the property.

Rental operation in Pennsylvania is governed and regulated by state, county, and municipal laws. See Kelly v. Borough of Sayreville, N.J., 107 F.3d 1073, 1077 (3d Cir. 1997) ("State law creates the property rights protected by the Fourteenth Amendment."). Because the mobile homes/trailers were installed and operated in violation of those laws, their use as rental property by either the landowner or the plaintiff-tenants is also unlawful. Thus, their rental agreement is likewise unlawful and invalid. See generally Puleo v. Zoning Hearing Bd. of Schuylkill Township, 722 A.2d 789, 791 n.4 (Pa. Commw. Ct. 1999) (quoting Black's Law Dictionary 1536 (6th ed. 1990) (an "unlawful" act is "acting contrary to, or in defiance of the law"; "unlawful" agreements are "ineffective in law, for they involve acts which, though not positively forbidden, are disapproved by law and are therefore not recognized as ground of legal rights because they are against public policy")); 6 Williston on Contracts 24 (4th ed. 1995)

10

([O]ne who has participated in a violation of the law will not be allowed to assert in court any right based upon or directly connected with the illegal transaction.") (citing federal and state case law)); Highpoint Townhouses, Inc. v. Rapp, 423 A.2d 932, 935 (D.C. 1980) ("[A] contract made in violation of a licensing statute that is designed to protect the public will usually be considered void and unenforceable.") (internal quotation marks omitted) (quoting Truitt v. Miller, 407 A.2d 1073, 1079 (D.C. 1979)).

In Puleo, a new owner of a piece of real estate property, located in a "limited industrial zone," had a dispute with a company as to the ownership of two billboards that it had installed. It was undisputed that the billboards constituted lawful nonconforming use. The company ended the dispute by cutting down the billboards with a chainsaw; there was no question that its act was knowing and intentional. Several months later, "without first securing a building permit," the new owner "reconstructed the billboards." Puleo, 722 A.2d at 790. The town denied the owner's application after the fact for a building permit. The town's zoning board also denied the owner's request to continue the nonconforming use of the billboards because they were not "involuntarily" damaged and no building permit was secured within one year of their destruction within the meaning of the local ordinance. A Pennsylvania trial court affirmed the board's decision.

On further appeal, the Commonwealth Court, a special state appellate court, noted that the owner did not challenge the validity of the zoning ordinance, but instead argued that its physical reconstruction of the billboards within a year of their destruction should be deemed to be in compliance with the ordinance and in continuation of the previous lawful nonconforming use. Id. at 791. The appellate court rejected the argument, concluding that the case was analogous to "an instance where a landowner applie[d] for and secure[d] a building permit through misrepresentation or fraud." Id. (citing D'Emilio v. Bd. of Supervisors, 628 A.2d 1230 (Pa. Commw. Ct. 1993)). "It follows, therefore, that if a person who applies for and secures a building permit through fraudulent means acquires no rights in the structure, then a person who completely ignores the requirement of securing a building permit altogether also cannot acquire any vested right in the structure." Puleo, 722 A.2d at 791 (emphasis added). The court concluded that the owner's "failure to obtain a building permit, therefore, made the effect of its reconstruction a nullity." Id. at 792 (emphasis added).

The violation in this case is much more flagrant than in Puleo. The owner in Puleo was at least trying to replace the two destroyed billboards that had been previously lawfully installed. In this case, the eleven trailer/mobile homes were installed not to replace any previous lawful use; they were installed without permission, and without the knowledge of the Township, in knowing violation of

11

state, county, and local laws.[15] Under the holding of <u>Puleo</u>, a landowner who completely ignores the requirements of state and local laws cannot have acquired any vested right in the rental use of his property. Similarly, the unlawful occupation of the rental property by the plaintiff-tenants has vested no property right in them. To rule otherwise, as did the District Court, would be to fashion a property right that is not recognized under—and contrary to—state law.

The tenants here do not, and cannot, have greater right than that of the owner with regard to the rental property. <u>See</u>, <u>e.g.</u>, <u>Adams Outdoor Advertising v. City of East Lansing</u>, 614 N.W.2d 634, 639 (Mich. 2000) ("It is fundamental property law that a lessor can transfer no greater rights than he possesses"; lessees' interest rights are limited to those possessed by the lessor.); <u>State v. Vaughan</u>, 319 S.W.2d 349, 354 (Tex. Civ. App. 1959) ("[T]enants who occupy the property have no greater right than the owners."); <u>Smith v. Woolery</u>, 137 N.E.2d 632 (Ohio Ct. App. 1955); <u>Wilmington Housing Auth. v. Nos. 500, 502, and 504 King St., and Nos. 503, 505, and 507 French St., Commercial Trust Co.</u>, 273 A.2d 280, 281 (Del. Super. Ct. 1970).[16]

because of health and living conditions are inapposite. Because the alleged leasehold interest in this case is <u>legally</u> non-existing, this case is materially different from those cases where lessees with lawfully constituted leasehold interests challenge condemnation or zoning ordinances that affect their property interests. <u>See</u>, <u>e.g.</u>, <u>Richman v. Philadelphia Zoning Bd. of Adjustment</u>, 137 A.2d 280, 283 (Pa. 1958) (a long-term commercial lessee had standing to apply for a use variance); <u>Nicholson v. Zoning Bd. of Adjustment</u>, 140 A.2d 604, 606 (Pa. 1958) (same); <u>Mobil Oil Corp. v. Zoning Hearing Bd. of Tredyffrin Township</u>, 515 A.2d 78, 79 (Pa. Commw. Ct. 1986).

For the same reasons, all the case law regarding whether tenants have <u>standing</u> to bring a <u>condemnation</u> action, alleging unlawful taking effected under a zoning ordinance or rezoning, is also inapposite. <u>See</u>, <u>e.g.</u>, <u>Millcreek Township v. N.E.A. Cross Co.</u>, 620 A.2d 558, 561 (Pa. Commw. Ct. 1993) (commercial lessees with rights to explore natural gas and develop wells had standing to petition for <u>de facto</u> taking).

Finally, this case is materially different from such cases as involving <u>condemnation</u> of property occupied by tenants because of serious and dangerous living conditions. <u>See</u>, <u>e.g.</u>, <u>Grayden v. Rhodes</u>, 345 F.3d 1225 (11th Cir. 2003) (involving condemnation and eviction of tenants in an apartment complex for their

---

[15] The landowner has not claimed mistake or ignorance.

[16] The cases cited by the tenants with respect to their standing to apply for a zoning variance, to bring a condemnation action, or to challenge their eviction

12

Where, as here, the owner has no vested property right, it would be anomalous to conclude that the tenants have any vested property right. Because property rights, including leasehold interests, are created by state law and the rental arrangement between the owner and the tenants is unlawful, the plaintiffs obtained no vested right in the rental property. Their rental agreement with the owner gave them no valid leasehold interest recognized and protected by state law. Under such circumstances, there can be no valid due process claim as a matter of law because there can be no deprivation of a nonexistent right.[17] Kovats, 749 F.2d

at 1047. The District Court's conclusion of due process violations predicated on a nonexistent right is, therefore, reversible error.

## II.

In footnote 9 of the majority opinion, the majority characterizes my analysis above as one that "begins and ends with charging the plaintiffs with the outcome of the zoning hearing. . . ." The majority opines that unless the plaintiffs had an "opportunity to appear at the zoning hearing that found their property to be in violation and therefore could . . . defend against that allegation," my analysis "does not adequately respond to the legal challenge implicit in plaintiffs' appeal."

Although the majority's criticism has some surface appeal, it misses the real issue here. Conceivably the plaintiffs may not have become aware of their landlord's zoning violations until after the Township's zoning enforcement hearing, but when and how the plaintiffs became aware of the violations does not, and cannot, affect the reality of the landlord's zoning violations. My analysis is grounded on the view that where the landowner's rental use of his

---

protection because of serious and dangerous living conditions). It was not disputed that the tenants in Grayden had legal right to live in the apartment complex. The tenants in all the cases cited above had lawful tenancy rights established and recognized under state laws.

[17] Following the Township Zoning Hearing Board's finding of violation against the landowner and denial of his variance request, the owner filed an application for conditional use of the property as a trailer/mobile home park. Some of the renters, as well as the owner, have appealed the zoning board's subsequent denial of the conditional use application to the state trial court. That appeal has been stayed pending the resolution of this appeal. Because both

the owner and the plaintiffs have no property right vested and recognized under the state law for their unlawful use of the property, their joint conditional use application is now an opportunity for them to establish their lawful use for the first time.

13

property was invalid and void <u>ab initio</u> for violations of state and municipal laws, as established by the zoning enforcement hearing attended by the landowner, his tenants did not acquire any right in the same rental use as a matter of law. To suggest otherwise would be to accord tenants greater rights than those possessed by the landowner in contravention of well established landlord-tenant laws.

To the extent that the majority's criticism embraces the plaintiffs' argument that the Township's zoning enforcement decision cannot be valid and binding on the tenants unless they participated in the enforcement hearing, the majority, as well as the tenants, has shown no legal authority to support that argument. The majority's own position has implicitly rejected that argument in light of its holding that the plaintiffs, with their <u>de minimis</u> interest, are not entitled to actual notice of the zoning enforcement hearing because their tenancy interest can be terminated at thirty-days' notice and the Township has given them several months to vacate the property.

Admittedly, my analysis does not answer the question of how or when the tenants knew or should have known that their occupancy of the property was invalid <u>because of the landowner's zoning violations</u> <u>prior to</u> the Township's negative determination. That issue, however, is not present in the tenants' action here. The tenants' argument, that they should have been given adequate notice of a land use violation would be valid if the Township brought an action against <u>them</u> for the land use violations, instead of the landowner. Where, as here, it is not disputed that the landowner had converted his property to a residential rental use in violation of state, county, and municipal laws, when and how the tenants should have become aware of their landowner's unlawful use of his land is irrelevant to the issue of whether they have any valid property right.[18] Their interest in the residential rental use of the property is at most co-extensive with the landowner's interest. Pennsylvania law holds only the landowner, not his tenants, responsible for any zoning violations that occur on his property.[19] Even if the tenants may

---

[18]People who rent property usually run the risk that the ostensible owner of it may not have good title to the property, that it may be subject to foreclosure because of a mortgage default or other lien delinquency, or that a lease may be void because it violates local zoning or state laws. Interested parties can avoid legal complications by obtaining information pertaining to the title and lien status of the property from the dockets of the county court house; information concerning the applicable zoning laws is generally available at the clerk's office for the local municipality.

[19]Under the Pennsylvania Municipalities Planning Code (MPC) § 10616.1, the plaintiffs are not entitled to notice of a zoning enforcement hearing

14

not have become aware of their landowner's zoning violations until after the zoning enforcement hearing, the established landowner's violations, resulting in nullification of his rental use of his property, precludes the tenants' due process claim as a matter of law. There cannot be a due process violation claim when the claimant has no valid property interest.

For these reasons, I do not believe that assuming that the tenants have a valid property interest does not resolve their constitutional claim. Under well-established case law, where, as here, the court is confronted with a due process claim, the court must determine <u>first</u> whether there is a valid property interest possessed by the plaintiffs. <u>Kovats</u>, 749 F.2d at 1047 (citing <u>Logan</u>, 455 U.S. at 428). I see no reason for the court to shirk its responsibility of making this

_____

against the landowner. The statute provides in relevant part:
(b) The enforcement notice <u>shall</u> be sent to [1] <u>the owner of record</u> of the parcel on which the violation has occurred, to [2] <u>any person who has filed a written request to receive enforcement notices</u> regarding that parcel, <u>and</u> to [3] <u>any other person requested in writing by the owner of record</u>.

53 Pa. Stat. Ann. § 10616.1 (emphases added). <u>The plaintiffs have not attacked the facial constitutionality of the statute</u>.

initial determination by making an assumption contrary to state law.

Furthermore, the majority's resolution of the tenants' due process claim, by reasoning that there is no deprivation of their property interest because, at most, they have a month-to-month leasehold interest, which requires only a thirty-day advance notice for termination under state law, and they have been given more than thirty days to vacate the property does not adequately respond to their due process claim. To the extent that such analysis is contingent on the tenants having a mere month-to-month leasehold interest and an adequate <u>post-deprivation</u> remedy, would the analysis be sustainable if the plaintiffs were year-to-year tenants, as some have claimed? The state statute, quoted in footnote 6 of this concurring opinion, mandates no separate notice of zoning violation hearing to <u>any type</u> of tenants (unless they have filed a written request with the municipality, or the landowner has requested in writing to the municipality that his tenants receive such notice), regardless of the length or type of tenants' leasehold interests.

### III.

Mindful of the Supreme Court's instruction that traditionally the courts should refuse to "decide constitutional questions when the record discloses other grounds of decision, whether or not they have been properly raised . . . by the parties," <u>Neese</u>, 350 U.S. at 78, we should not engage in a constitutional due

15

process analysis when the record discloses beyond dispute another ground for disposal of the plaintiffs' claim. That ground is that the tenants have no vested property interest under state law. This approach is especially appropriate where the plaintiffs have not attacked the facial constitutionality of the state statute, MPC § 10616.1.

I would, therefore, reverse the District Court's judgment on the ground that the plaintiffs have shown no cognizable property interest under state law and eschew unnecessary federal due process analysis.