McKEE, Circuit Judge.
We are asked to review an order of the district court enjoining New Garden Township and its employees (“the Township”) from enforcing a zoning enforcement notice that would have resulted in the eviction of plaintiff tenants.[1] The plaintiffs requested the injunction pursuant to 42 U.S.C. § 1983 arguing that the Township had violated their Fourteenth Amendment right to procedural due process in failing to notify them of a zoning hearing into whether their landlord was violating certain zoning ordinances by allowing mobile homes on property not zoned for residential use. We agree that plaintiffs have not established a procedural due process violation, and we will therefore reverse.
I. FACTS AND PROCEDURAL HISTORY
Since the 1990s, plaintiffs Guillermina Ruiz, Rodolfo Villagomez, Antonio Lopez, Antonio Ortiz, Rafael Luna, Angelica Sanchez, Jose J. Padrón and J. Guadalupe *205 Lopez have been tenants in mobile homes located at 320 Ellicott Road in New Garden Township, Pennsylvania. Since 1989, that property has been designated as a C-1-2 Limited Commercial Industrial District.[2]
The plaintiffs paid rent in the amount of $500 to $600 per month pursuant to oral leases with Dante and Lucy DiUbaldo.[3] It is uncontested that DiUbaldo agreed that at least one of the tenants could remain on the property for up to three years and that DiUbaldo would decide how long the tenant would have to vacate the property if he decided to leave.
On June 22, 2000, the Township issued an enforcement notice citing DiUbaldo for violations of the township’s zoning ordinance. The violation resulted from the presence of the plaintiffs’ mobile homes on the property located at 320 Ellicott Road. The zoning notice was issued because the light industrial zoning designation of that property did not allow the property to be used as a trailer park.[4] The notice required DiUbaldo to begin removing the mobile homes within 10 days and to complete the process within 45 days. The notice also informed him that he could appeal the enforcement action to the New Garden Township Zoning Hearing Board (“ZHB”).
DiUbaldo did appeal, and hearings were held on November 15 and December 13, 2000, before the ZHB. None of the tenants participated in that appeal although notice of the hearings was apparently posted on the Ellicott Road property. The ZHB denied DiUbaldo’s appeal on January 22, 2001, but it altered the terms of the aforementioned enforcement order. DiUbaldo was ordered to give the tenants notice to quit the property by March 1, 2001 and he was ordered to remove the mobile homes by July 2001.[5]
As instructed, DiUbaldo served the notices to quit on the tenants around March 1, 2001. Plaintiff Lopez testified that this was when he first learned that the Township was enforcing the zoning ordinance and the effect it would have on him. Plaintiff Luna testified that he did not learn of the situation until after the hearing. Despite the notice to quit, the tenants failed to vacate the property by July 2001, and DiUbaldo thereafter initiated eviction proceedings against them. As a result of those proceedings, a local magistrate eventually ordered the plaintiffs’ eviction.
The tenants then filed this action in the U.S. District Court for the Eastern District of Pennsylvania seeking to enjoin the ZHB’s order requiring DiUbaldo to serve them with notices to quit. They argued that, given their property interest, they were entitled to notice of the proceedings before the ZHB. They claimed that the *206 Township’s failure to notify them of those hearings violated their right to procedural due process under the Fourteenth Amendment.[6] As we noted at the outset, the district court agreed and granted a permanent injunction. This appeal followed.
II. JURISDICTION AND STANDARD OF REVIEW
The district court’s final order granting a permanent injunction is appeal-able under 28 U.S.C. § 1291. Ameristeel Corp. v. Int’l Bhd. of Teamsters, 267 F.3d 264, 267 (3d Cir.2001). We have jurisdiction over the section 1983 claim under 28 U.S.C. § 1331, and we have supplemental jurisdiction over concomitant state law issues under 28 U.S.C. § 1367. “We review a district court’s decision to grant or deny a permanent injunction under an abuse of discretion standard. However, because an abuse of discretion exists where the district court’s decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact, we apply plenary review to the District Court’s legal conclusions.” Ameristeel, 267 F.3d at 267 (internal quotation marks and citations omitted).
III. DISCUSSION
In order to satisfy the requirements for a permanent injunction, plaintiffs must establish that they will ultimately succeed on their claim. Shields v. Zuccarini 254 F.3d 476, 482 (3d Cir.2001). In order to prevail on their section 1983 claim, plaintiffs must establish that persons acting-under color of law deprived them of a protected property interest without due process of law. Midnight Sessions et al. v. City of Philadelphia, 945 F.2d 667, 680 (3d Cir.1991).
State law defines property interests for purposes of procedural due process claims. See Bd. of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The parties agree that, under Pennsylvania law, leaseholders have the same right to possession of real estate as an owner during the term of the lease. The district court found that the plaintiffs had a protected property interest in the form of oral month-to-month leases because the conduct between the parties established that the plaintiffs each had a month-to-month lease. However, we hold that, even if plaintiffs did establish a protected interest based upon their leasehold estates, they were nevertheless not denied procedural due process because the procedure utilized by the ZHB was not constitutionally infirm.
“In Pennsylvania, if the landlord and tenant have failed to specify a definite period of time for the lease to continue, the court may imply the type of tenancy indicated by the conduct of the parties.” Ronald M. Friedman, Pa. Landlord-Tenant Law and Practice § 1.10 (3d ed.2004). The tenants were required to pay about $500 to $600 monthly, and such monthly rental payments generally support the existence of a month-to-month tenancy. See Restatement (Seoond) of PROPERTY § 1.5 (2003) (‘Where the parties enter into a lease of no stated duration and periodic rent is reserved or paid, a periodic tenancy is presumed. The period thus presumed is equal to the interval for which rent is reserved or paid to a maximum periodic tenancy of year to year.”).
However, “[t]he presumption that a periodic tenancy is intended may be rebutted by language or circumstances showing a contrary intent.” Id. The rec *207 ord here contains unchallenged evidence that the plaintiffs could terminate their leases at any time, and that DiUbaldo would then decide how long tenants had to vacate their premises following such termination. Thus, the landlord or tenant could end the tenancy abruptly at any time even though the rent was calculated and paid monthly. Since the tenancies were “for an uncertain or indeterminate term which is terminable at the volition of either landlord or tenant,” plaintiffs arguably had interests analogous to tenancies at will rather than month-to-month tenancies. P.L.E.2d LANDLORD and Tenant § 74.[7] Although the tenants paid rent on a monthly basis, there is no evidence that the plaintiffs and DiUbaldo explicitly agreed to month-to-month leases, and the district court does not explain how it concluded that these were month-to-month leases as opposed to tenancies at will.
However, since the Township now agrees that tenants had month-to-month leases, we will proceed as if they did. See Brief at 23 (“as month-to-month tenants, plaintiffs had no legitimate expectation to continued possession of property ... ”).[8] Moreover, under Pennsylvania law, any tenancy creates a property interest. Berrios v. City of Lancaster, 798 F.Supp. 1153, 1157 (E.D.Pa.1992) (stating that Pennsylvania law regards any lease as a property interest); see also Ward v. Downtown Dev. Auth., 786 F.2d 1526, 1529 (11th Cir.) (discussing how Florida law makes any tenancy a compensable property interest for purposes of Fifth Amendment public takings).
However, the plaintiffs’ property interest here is tenuous at best because any such interest appears to have been created in violation of a zoning ordinance. Cf. Puleo v. Zoning Hearing Board of Schuylkill Township, 722 A.2d 789 (Pa. Commw.1999) (holding that property owners could not retain a structure on their property because they built the structure in violation of a zoning ordinance and another municipal ordinance).[9]
*208 However, given the facts here, we need not decide whether plaintiffs had a cognizable property interest because even if they did, it is clear that they had no reasonable expectation of future occupancy beyond the period which the landlord might agree to in the event of termination.[10] As noted, that period was undefined and left completely to the discretion of the landlord. However, Pennsylvania law requires that tenants be given at least 30 days’ notice of termination. 68 Pa. C.S.A. § 250.501(c) (2001). Accordingly, it appears that the tenants could reasonably expect no more than present enjoyment of their leased premises and 30 days additional occupancy upon notice that their landlord decided to terminate any of their leases. See Ward, 786 F.2d at 1529 (stating in dicta that legally sufficient notice to vacate would terminate a tenant’s interest as of the end of the notice period).[11]
The ZHB ordered DiUbaldo to notify the tenants of its ruling by March 1, 2001, and to remove the mobile homes from the property by July 1, 2001. Thus, from the time the tenants first heard of the necessity of leaving the premises, they had four months to depart. Their claimed property interest, however, entitled them to only 30 additional days of tenancy after the notification by the landlord of termination of the lease. Thus, the actions of the ZHB could not have deprived the tenants of any property interest to remain on the premises. In fact, the ZHB ruling gave the tenants more notice of termination than they would otherwise have been entitled to. Accordingly, there could not have been an unconstitutional taking of a protected property interest.[12]
C. Notice
Because the plaintiffs were not deprived of a protected property interest in their leases, the Constitution did not mandate that they receive notice of the hearing before the ZHB, and the district court’s conclusion to the contrary can not stand.
The plaintiffs also argue that the Pennsylvania Municipalities Planning Code (“MPC”) gives them a right to notice. *209 However, we are not persuaded. The MPC requires localities to send an enforcement notice to “the owner of record of the parcel on which the violation has occurred, to any person who has filed a written request to receive enforcement notices regarding that parcel, and to any other person requested in writing by the owner of record.” 53 Pa. Stat. Ann. § 10616.1 (2001). A lessee is treated as an owner under section 10616.1 only “if he is authorized under the lease to exercise the rights of the landowner” or otherwise has a proprietary interest in the land. 53 Pa. Stat. Ann. § 10107 (2001). The plaintiffs meet none of these conditions precedent to getting notice under section 10616.1. There is nothing in the record even suggesting that they were authorized to exercise the DiUbaldos’ rights as property owners, that they had anything remotely resembling a proprietary interest in the property, or that the DiUbaldos requested that they receive notice of zoning violations. Therefore, the district court properly held that the MPC did not mandate that plaintiffs be given notice of zoning violation enforcement. However, the court went further and concluded that the MPC was unconstitutional as applied because it did not mandate notice to the plaintiffs. We have already explained why plaintiffs are not constitutionally entitled to notice. Accordingly, we must reverse the district court’s ruling that the MPC is unconstitutional as applied to them.[13]
IV. CONCLUSION
For all of the above reasons, we will reverse the district court’s order granting a permanent injunction.

. The defendants also ask us to reverse the district court's decision to deny its motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and order that the action be dismissed with prejudice. The record before us regarding the disposition of the motion to dismiss is unclear. The district court mentions it in its opinion in support of issuing the permanent injunction but does not explicitly state that it denied the motion or explain why it denied the motion. Nor does the motion appear on the district court docket included in the record on appeal. As a result, we feel that the district court would be better equipped to revisit its decision and the state of this claim on remand.

. The property contains “mushroom houses.”

. We will refer only to Mr. DiUbaldo in the rest of the opinion because he managed the property.

. The property became part of the C-I-2 Limited Commercial Industrial District when it was re-zoned in 1989, but had been zoned as residential beforehand.

. Although DiUbaldo served the notices to quit on the plaintiffs pursuant to the enforcement notice that issued after he lost his appeal before the ZHB, he also filed a conditional use application with the New Garden Board of Supervisors. At the hearings before the Board of Supervisors, he argued that the mobile homes were a permissible expansion of a pre-existing nonconforming use because one of the mobile homes was placed on the property before 1989 when the property was re-zoned. It is undisputed that the tenants were properly given notice of these hearings, and that some of them attended the hearings. The Board of Supervisors denied his application.

. They also argued that some of the procedural safeguards that due process required were codified in the hearing notification guidelines at 53 Pa. Stat. Ann. § 10616.1 (2003).

. See Heck v. Borda, 6 A. 392, 393 (Pa.1886). There, the Pennsylvania Supreme Court reversed a trial court’s holding that a lease established a tenancy at will, finding instead that the lease established a year-to-year tenancy. The Heck Court found that the parties intended to create a tenancy from year-to-year because the written lease stated that the tenancy would last as long as a yearly royalty was paid. Id. Because the lessor had express authority to terminate the lease in certain events, the court believed this authority tended "to exclude the inference” that both parties had the power to terminate it at will, which is a necessary element of a tenancy at will. Id. The court also held that a provision requiring the landlord to spend a certain amount to put the property in working order further established that the parties did not intend to create a tenancy at will. Id. Although the leases here also include a periodic payment of rent, they expressly provide that either party can terminate them at any time. Unlike the lease in Heck, they do not limit the right to abruptly terminate to only one party, nor do these oral leases have any terms suggesting that a future relationship is expected. The lease in Heck required the landlord’s investment in the leased property.

. The plaintiffs also argue that their leases were year-to-year, but this argument is waived because the plaintiffs raised it for the first time on appeal. See Gass v. V.I. Telephone Corp., 311 F.3d 237, 246 (3d Cir.2002).

. Judge Rosenn’s analysis begins with the conclusion that "[i]t is undisputed that neither the landowner nor the plaintiff-renters have complied with any of [the applicable zoning] codes.” Concurring Op. at 211. It then proceeds governed by the principle that "the unlawful occupation of the rental property by the plaintiff-renters has vested no property right in them.” Id. at 212 (citing Puleo). However, the plaintiff-renters are complaining that they had no opportunity to appear at the zoning hearing that found their property to be in violation and therefore could not defend against that allegation. In *208 asmuch as it appears that the trailers in question are the only homes the plaintiffs have, their interest in defending against the violations was at least as strong as that of DiUbal-do, the absentee owner. Accordingly, an analysis that begins and ends with charging the plaintiffs with the outcome of the zoning hearing does not adequately respond to the legal challenge implicit in plaintiffs' appeal.

. Cf. U.S. v. Petty Motor Co., 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729 (1946). Petty held that a tenant can not have an expectation to remain on property following condemnation for public use given an express term in the lease to relinquish all rights upon such condemnation. Id. at 376, 66 S.Ct. 596.

. The tenants in Ward had a protected property interest beyond that period of notice and, based on that, a right to procedural due process because the state agency that acquired the property and displaced the tenants did not meet the "conditions set forth in the legisla-five grant of its authority,” including holding hearings on the hardship that the tenants would endure if they were displaced. Id. at 1532.

. At oral argument, the plaintiffs cited Schuylkill Township v. Overstreet, 71 Pa.Cmwlth. 348, 454 A.2d 695 (1983), as support for its contention that plaintiffs' leases entitled them to be present at the ZHB hearing. But Overstreet held only that tenants had to be joined in an action to enforce an already-issued order terminating their rights to possess the rental property. Id. at 695-96. It says nothing about whether the tenants had a right to be present for the determination of their right to continued possession of a rental property that was violating zoning ordinances. Cf. City of New Orleans v. Buff a, 69 S.2d 140, 140-41 (La.App.1953) (bringing an action against landlord and tenant to enjoin the tenant's use of the premises in violation of city zoning ordinances; this case was also cited by the plaintiffs at oral argument).

. In doing so, we do not suggest that we are insensitive to the situation of the plaintiffs. It appears from everything on this record that these tenants are migrant farmers with few if any alternatives to the plight in which they found themselves.