749 F.2d 1041
 21 Ed. Law Rep. 801
 Gabor G. KOVATS, Stephen C. Procuniar, Joy L. Davis, Roberta
M. Delson, Hace Tishler and Anna Beck
v.
RUTGERS, the State University Board of Governors of Rutgers,
The State University, Edward Bloustein, as President of
Rutgers, The State University and individually and John R.
Martin, as Vice-President for personnel of Rutgers, The
State University and individually.
Appeal of Stephen PROCUNIAR, Roberta Delson, and Joy Davis.
 No. 84-5124.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 12, 1984.
Decided Dec. 4, 1984.
 
 Paul Schachter (Argued), Reinhardt & Schachter, P.C., Newark, N.J. for appellants.
 Carpenter, Bennett & Morrissey, Newark, N.J., of counsel.
 Edward F. Ryan, Newark, N.J., on brief.
 Linda B. Celauro (Argued), Newark, N.J., for appellees.
 Before ADAMS, HIGGINBOTHAM, and SLOVITER, Circuit Judges.
 OPINION OF THE COURT
 ADAMS, Circuit Judge.
 
 
 1
 This case arises out of a claim by a group of professors formerly employed at Rutgers, the State University of New Jersey. They allege that by virtue of certain university regulations they had acquired academic tenure (appointment without limitation of time), and that their respective discharges violated these tenure rights. Three of these professors, Stephen C. Procuniar, Joy L. Davis, and Roberta M. Delson, appeal from the district court's grant of summary judgment for Rutgers. Because the district court erred in giving preclusive effect to a prior state court decision involving the professors' claims, we vacate the judgment and remand.
 
 
 2
 * The procedural history of this matter is complex. An action was originally filed in New Jersey state court in March, 1982, by two former professors at Rutgers and by the Rutgers council of the American Association of University Professors (AAUP), naming as defendants the University, its President, its Vice-President for Personnel, and its Board of Directors. The complaint alleged that the dismissal of the professors was inconsistent with their tenure rights, thereby violating federal due process guarantees, state constitutional rights, state contract law, and the teachers' collective bargaining agreement. The professors initiated proceedings in the state court following their unsuccessful attempt to secure relief through a grievance procedure. Subsequently, five additional aggrieved professors joined the action, including appellants Joy Davis and Roberta Delson. Appellant Procuniar was an original party.
 
 
 3
 Most of these same plaintiffs, including appellants, brought suit in federal court pursuant to 42 U.S.C. Sec. 1983 (1982), in June, 1982, alleging a deprivation without due process of their property interests in employment. In October, because there was an unresolved state law issue--the alleged property right to tenure--the district court invoked the abstention doctrine first enunciated in Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Plaintiffs then pressed their state court action, but expressly reserved their federal claims for later federal court review, a procedure first outlined in England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).
 
 
 4
 In the New Jersey state court, the plaintiffs argued first that there are two methods by which a teacher may obtain tenure at Rutgers. One is by the traditional promotion route set forth in University Regulation 60.2.[1] Under this procedure, recommendations for academic promotion and tenure normally originate at the departmental level. The faculty member is then evaluated at various administrative levels within the University, and the final tenure decision is rendered by the Board of Governors upon referral from the University President.[2]
 
 
 5
 The second method by which tenure is acquired, plaintiffs maintain, is University Regulation 60.1. That regulation provides in part:
 
 
 6
 Assistant professors ordinarily are appointed for terms of three years, provided, however, that any assistant professor who is reappointed as such after six years' service in that rank thereafter holds office without limitation of term to hold office indefinitely at the pleasure of the Board of Governors. A terminal year may be available to those assistant professors appointed prior to July 1, 1972 so that there could be a total of six years in the grade of assistant professor or equivalent, plus an additional terminal year as lecturer .... For those officers of instruction who are newly appointed after June 30, 1972 ... full-time faculty appointments or reappointments, after a seven year period shall be considered to be without limitation of term and the appointee shall hold office indefinitely at the pleasure of the Board of Governors and shall be said to have academic tenure. App. at 68.
 
 
 7
 Plaintiffs contended that by virtue of Regulation 60.1 a faculty member may acquire "de facto" tenure through length of service. In the state court, the plaintiffs urged that they had in fact achieved this de facto tenure, and that their respective terminations violated Regulation 60.1.[3]
 
 
 8
 Rutgers moved for summary judgment in the state court proceeding, arguing that Regulation 60.1 had not conferred tenure upon the plaintiffs. It was and is the defendants' position that Regulation 60.2, which concerns the traditional method for obtaining tenure, is the exclusive procedure by which junior faculty members may achieve tenured appointments at Rutgers. According to the University, Regulation 60.1 merely provides the time frame within which determinations with respect to promotions to tenured positions must be made. Rutgers also disputed appellants' version of their employment history. Specifically, Rutgers asserted that Professor Procuniar was considered for, but not granted, tenure during academic year 1978-79, and that thereafter he had been employed as a non-tenured track lecturer. As to Davis, the University asserted that she had been employed as an Assistant Professor from 1973 to 1979, but that in 1978 Davis had agreed to remove two years from the period counted in her pre-tenure probationary term and in exchange, had been rehired as an Assistant Professor through 1981. In 1979, Rutgers claimed, Davis declined the opportunity to be considered for tenure. Rutgers' version of Professor Delson's employment history included a similar agreement to exclude two years from her probationary period. In return, Delson was employed as an Assistant Professor through 1981. She allegedly was evaluated for, and denied, tenure in 1979 and 1980, and then rehired as a non-tenure track instructor for 1980-81.
 
 
 9
 The state court never considered whether the appellants had actually been employed long enough to achieve de facto tenure, or even whether Regulation 60.1 created a means to achieve tenured status. Instead the state court dismissed the action on the basis of what it termed a "procedural defense," based on the provisions of the collective bargaining agreement between Rutgers and the AAUP. The bargaining agreement that was in effect from 1979 to 1981 details a two-step grievance procedure, and states in Article IX that "whether or not pursued, this procedure shall constitute the sole and exclusive right and remedy of bargaining unit members and the AAUP for any and all claims cognizable under this procedure." App. at 407. The category of cognizable grievances includes an
 
 
 10
 allegation that, with respect only to those University policies, agreements, administrative decisions or Regulations which affect terms and conditions of employment ... there has been a misrepresentation, misapplication or violation of such a University policy, agreement, administrative decision or Regulation which has affected the terms and conditions of employment of a member.
 
 
 11
 App. at 404.
 
 
 12
 Step one of the grievance procedure involves an investigation and decision by the Vice President for University Personnel, and step two consists of arbitration by a three-member panel. Article IX provides:
 
 
 13
 Exception as to Category Two Grievances. If the AAUP does not timely invoke step two, and the AAUP and/or the grievant(s) commence a Court proceeding pertaining to the grievance within 30 working days of the last date upon which the AAUP could have timely invoked step two, the defenses of exhaustion of remedies or exclusivity of the grievance procedure will not be available to the University in such court proceeding.
 
 
 14
 App. at 408. Thus, with one exception, the bargaining agreement seeks to make the grievance procedure an exclusive remedy.
 
 
 15
 On July 20, 1983, the state court held that the claims of Delson and Davis were barred by the grievance procedures of the collective bargaining agreement. As to Delson, the court found that she had pursued her tenure dispute as provided for in the agreement and had fully exhausted the grievance procedure, including step two, which culminated in an adverse arbitrator's award in 1982. The University President had adopted that decision, making it final and binding. App. at 103-04. Davis had also invoked the collective bargaining procedure, but her claim was rejected at step one of the grievance procedure as not having been filed in a timely manner. The state court interpreted the bargaining agreement to require that such a dispute over timeliness be submitted to binding arbitration. Since Davis did not do this, the grievance did not fall under the limited circumstances under which litigation is permitted by the collective bargaining agreement. App. at 107-08.
 
 
 16
 Procuniar's situation was slightly more complicated. He apparently first invoked the grievance procedure established under a previous collective bargaining agreement, in effect during 1975-78. While that agreement did not explicitly make arbitration an exclusive remedy, the state court construed the agreement as implicitly establishing the grievance procedure as the teachers' exclusive remedy. Procuniar, therefore, could not challenge in court the adverse determination he had received in that first grievance. Procuniar also invoked the grievance procedure under the later bargaining agreement. The arbitrators never reached the merits of Procuniar's second grievance, believing it to be barred on res judicata grounds by the first grievance. The state court evaluated this decision at a separate hearing on November 17, 1983, concluding that although the second grievance referred to events occurring after the first grievance was resolved, the essence of the second grievance was identical to that disposed of two years earlier. App. at 384-85. Consequently, Procuniar's claim was also dismissed.
 
 
 17
 The state court noted in the alternative that even assuming that the plaintiffs had a colorable claim to tenure, the University had afforded them due process through the arbitration of their claims. App. at 127-30.
 
 
 18
 Upon the matter's return to federal court, the University moved for summary judgment on the ground that the plaintiffs' federal claims were precluded by the state court decision. The district judge viewed the state court as having determined that the grievance procedure set forth in the relevant collective bargaining agreements provided the exclusive remedy available to the plaintiffs for determining whether they had acquired tenure based solely on length of service. App. at 35. Although recognizing that the state court had not reached the merits of the plaintiffs' tenure claims and that in fact the state court had refused to permit the introduction of any evidence on the issue of de facto tenure, App. at 45, the district judge decided that the "effect" of the state decision was to uphold Rutgers' determination that the plaintiffs had not acquired tenure. App. at 41.
 
 
 19
 In answering the threshold question presented by the plaintiffs' due process claim--whether the professors had been deprived of any property rights--the district court gave preclusive effect to the state court's construction of the collective bargaining agreement and its decision that the dispute over tenure was exclusively within the scope of the arbitrator's authority. It thus granted summary judgment for the defendants. App. at 50. Three of the professors appealed the granting of summary judgment for the defendants.[4]
 
 II
 
 20
 A principal question before us is to which issues, determined by a state court following Pullman abstention by the federal court, may the federal court give preclusive effect when there has been an England reservation of federal claims. Since the plaintiffs' federal claim concerned the deprivation of property without due process, the district court abstained to allow the state court to assess whether the law of New Jersey creates a property right in tenure. The teachers assert that the state court never resolved this issue; instead, they insist that the state court interpreted and applied the procedural restrictions of a collective bargaining agreement, and ruled that these procedures satisfied federal due process requirements. We must determine whether the federal court properly gave preclusive effect to the state court decision.
 
 
 21
 Congress has required federal courts to give the same preclusive effect to state court judgments as would the courts of the state from which the judgments emerged. The full faith and credit statute, 28 U.S.C. Sec. 1738 (1982), declared that the "judicial proceedings of any court of any State ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State."
 
 
 22
 The preclusion doctrine generally is applied when a litigant has received a final state court judgment before going to federal court or before receiving a final federal court decision. The Supreme Court has held that state court judgments are to be accorded collateral estoppel (issue preclusion) effects in federal court in a Sec. 1983 action, Allen v. McCurry, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Indeed, the Court recently has held that a state court judgment is to have the same claim preclusive effect in a federal Sec. 1983 action as in the rendering state's courts. Migra v. Warren City School District Bd. of Education, --- U.S. ----, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984).[5]
 
 
 23
 However, the issue of preclusion in the Sec. 1983 case at hand arises in the context of Pullman abstention. In this procedural posture the Supreme Court has emphasized the right of a plaintiff to return to the federal forum following the state court decision so long as he or she did not unreservedly litigate the relevant federal claims in state court. "There are fundamental objections to any conclusion that a litigant who has properly invoked the jurisdiction of a federal district court to consider federal constitutional claims can be compelled without his consent and through no fault of his own, to accept instead a state court's determination of those claims." England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 415, 84 S.Ct. 461, 464, 11 L.Ed.2d 440 (1964). Significantly, in its major preclusion decisions the Court has sought to distinguish the England situation.
 
 
 24
 In the event that a Sec. 1983 plaintiff's federal and state law claims are sufficiently intertwined that the federal court abstains from passing on the federal claims without first allowing the state court to address the state law issues, the plaintiff can preserve his right to a federal forum for his federal claims by informing the state court of his intention to return to federal court on his federal claims following litigation of his state claims in state court. See, e.g., England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).
 
 
 25
 Migra, --- U.S. at ---- n. 7, 104 S.Ct. at 898 n. 7; see also Allen, 449 U.S. at 101 n.17, 101 S.Ct. at 426 n. 17 ("The England decision is inappropriate to the question before us.")
 
 
 26
 Appellants assert that the Supreme Court's treatment of England in its preclusion cases requires that no preclusive effect of any kind be given to any state court decision on return to federal court following abstention. While the Court clearly has reaffirmed the validity of England 's reservation procedure, we do not read its opinions to mean that in an England reservation case no preclusive effect may ever be given to a state court determination. A state court's resolution of the state law question that required Pullman abstention clearly must be given some preclusive effect; otherwise abstention would be a meaningless procedure.[6]
 
 
 27
 In cases such as this one, involving an alleged deprivation of property without due process of law, a two-part inquiry is required. E.g., Logan v. Zimmerman Brush Co., 455 U.S. 422, 424, 102 S.Ct. 1148, 1151, 71 L.Ed.2d 265 (1981). The first question is whether the plaintiff was deprived of a protected property interest. Property interests, while protected by the Constitution, are not created by the Constitution. "Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); see also Leis v. Flynt, 439 U.S. 438, 441, 99 S.Ct. 698, 700, 58 L.Ed.2d 717 (1979). The definition of property, therefore, may turn in some cases on a question of state law. If a property interest is found to exist, the second question--what process is due--is a matter of federal law. Memphis Light, Gas & Water Division v. Craft, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978); see Logan, 455 U.S. at 432, 102 S.Ct. at 1155. Federal due process guarantees are not diminished by the fact that the state has specified lesser procedures which it deems adequate. See Vitek v. Jones, 445 U.S. 480, 491, 100 S.Ct. 1254, 1262, 63 L.Ed.2d 552; Logan, 455 U.S. at 432, 102 S.Ct. at 1155.
 
 
 28
 When a plaintiff alleges a deprivation without due process of a property interest created by state law, a recognition of the principles underlying the abstention and preclusion doctrines requires federal courts to give preclusive effect to a state court determination of the state law issue--the existence of a property interest. Implicit in the abstention doctrine is the notion that upon resolution of the state litigation the federal claim may disappear. England, 375 U.S. at 423, 84 S.Ct. at 468; Pullman, 312 U.S. at 501, 61 S.Ct. at 645. If there is no property interest, there can be no valid due process claim. Thus the fact that a state court decision on state law can preclude a federal court from reaching the merits of a plaintiff's federal claim is not always troublesome. However, when a state court resolves issues beyond those upon which the federal court abstained, the federal court must be careful not to deprive plaintiffs of their right to a federal adjudication of a federal claim. The state court here stressed the exclusive nature of the collective bargaining agreement's grievance procedure, and held in the alternative that the professors had received an adequate opportunity to be heard through the arbitration process, i.e., that they had been afforded due process. App. at 128-30. Such an analysis does not support the granting of preclusive effect to the state court decision regarding the reserved federal claim after abstention for resolution of a subsidiary issue controlled by state law.
 
 III
 
 29
 More uncertain is whether the state court decision here ever resolved the state law issue. The district court correctly observed that the state court had not rendered "an opinion on the proper construction of [the disputed] regulations or on whether the arbitration awards denying plaintiffs' tenured status were correct." App. at 40-41. Instead the state court relied on the fact that the professors' claims of tenure had been addressed through the collective bargaining agreement grievance procedures, and "that the grievance procedures set forth in the agreement provided the exclusive remedy available to the plaintiffs." App. at 35. Thus, while the arbitrators arguably determined that the plaintiffs had no property interest in tenure, the state court merely affirmed on other grounds and never reached the merits of the property question.
 
 
 30
 Rutgers suggests that our analysis of this issue is guided by Kremer v. Chemical Construction Corp., 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), in which the Court held that Sec. 1738 required a federal court to afford preclusive effect in a title VII action to a state court's affirmance of a New York state agency determination that an employment discrimination claim was meritless. Again, it must be emphasized that the issue of preclusion in Kremer arose in a context in which the plaintiff received a final state court judgment on his discrimination claim, and then brought a federal action. This differs significantly from a situation in which a plaintiff invokes federal jurisdiction before any judgment has been issued on his claim, the federal court then abstains for a state court determination of a state law issue, and the plaintiff reserves his federal claims.
 
 
 31
 Moreover, in Kremer, the Supreme Court emphasized that giving preclusive effect to such a state court decision was appropriate because of the full "panoply of procedures, complemented by administrative as well as judicial review" afforded a claimant under the state discrimination law. Id. at 484, 102 S.Ct. at 1899. The state administrative agency acted in a judicial capacity, was required to investigate whether there was probable cause to believe the complainant, and even had the power to issue subpoenas. Judicial review of the merits of the arbitration decision covering the discrimination claim was available, under the "arbitrary and capricious" standard. Id. at 483-84, 102 S.Ct. at 1898-99.
 
 
 32
 In the case at issue, however, there has not been a judicial determination of the state law aspect of the merits of appellants' Sec. 1983 claim, i.e., whether state law creates a property interest in tenure. As noted, the state court relied on the exclusivity of the collective bargaining agreement. The federal courts have not adopted the view that a property interest in employment is conditioned by the procedural limitations which accompany the grant of the interest by the state. Cf. Arnett v. Kennedy, 416 U.S. 134, 155, 94 S.Ct. 1633, 1644, 40 L.Ed.2d 15 (1974) (plurality). Nor did the New Jersey state court apply this approach to the particular property interest alleged here. Further, the property interest claimed by the appellants is established by regulations promulgated by authority granted by state statute. The procedural limitations relied on by the state court are not contained in the regulation granting the property interest, but in a wholly distinct collective bargaining agreement. That the AAUP and the University agreed to resolve disputes over those regulations through a given procedure does not change the legal nature of the property interest granted by the state.
 
 
 33
 Even if the state court was correct in holding that it could not review the merits of appellants' claims because of the exclusivity of the collective bargaining agreement, this does not alter the fact that the only determination on the merits in this case has been by an arbitration panel. Thus Kremer is inapposite. On point is the recent case of McDonald v. City of West Branch, --- U.S. ----, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984), in which the Court held "that in a Sec. 1983 action, a federal court should not afford res judicata or collateral estoppel effect to an award in an arbitration proceeding brought pursuant to the terms of a collective bargaining agreement." Id. at ----, 104 S.Ct. at 1804. Noting that arbitral factfinding is generally not equivalent to judicial factfinding because usual procedural safeguards are limited or unavailable in arbitration, the Court decided that in a Sec. 1983 action an arbitration proceeding cannot provide an adequate substitute for a judicial trial.[7]
 
 
 34
 Since under McDonald a federal court may not give preclusive effect to an arbitration decision, and since the state court, after Pullman abstention, did not address the state law issue properly before it--whether the regulations create a property interest in tenure--the district court erred in giving preclusive effect to the state adjudication. On remand the district court should address the property issue.
 
 IV
 
 35
 The decision of the district court will be vacated and the matter remanded for action consistent with this opinion.
 
 
 
 [1]
 New Jersey has by statute delegated authority to the University Board of Governors to promulgate regulations governing university policy. 18A N.J.Stat.Ann. Secs. 65-25, 65-28 (West 1984)
 
 
 [2]
 Such tenure decisions are based generally on the criteria set forth in University Regulation 3.30, including teaching effectiveness, scholarly and creative activity, research accomplishments, and professional activity. App. at 216
 
 
 [3]
 For example, appellant Procuniar claimed that he had been promoted to the rank of Assistant Professor in July, 1972, and was employed continuously at that rank or higher until dismissed in June, 1982. Appellant Davis was allegedly appointed as an Assistant Professor in the academic year 1973-74, and was terminated by the University as of June 30, 1981. Finally, Professor Delson asserted that she became an Assistant Professor in 1974, and was terminated on June 30, 1981
 
 
 [4]
 Six of the seven state court plaintiff-professors were original parties in the federal district court action. During the state court proceedings, the complaints of three of the professors were dismissed, apparently as a result of settlement. App. at 97-98. Thus following the state court's decision only the three appellants moved to reopen the federal action
 
 
 [5]
 In general, claim and issue preclusion relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication. Montana v. United States, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). Giving preclusive effect to a state court decision in a later federal Sec. 1983 action serves the policies of finality and judicial economy, and also promotes comity between state and federal courts. Yet, it also subordinates to some degree the strong Congressional policy embodied in Sec. 1983 that federal courts should act as the primary and final arbiter of federal rights. See Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); see also Allen, 449 U.S. at 110, 101 S.Ct. at 422 (Blackmun, J., dissenting)
 
 
 [6]
 Abstention is a judge-made vehicle for according "appropriate deference to the 'respective competence of the state and federal court systems.' " England, 375 U.S. at 415, 84 S.Ct. at 465 (quoting Louisiana P. & L. Co. v. Thibodaux, 360 U.S. 25, 29, 79 S.Ct. 1070, 1073, 3 L.Ed.2d 1058 (1959)). In permitting a federal claimant to return to federal court following abstention because of the primacy of the federal judiciary in deciding questions of federal law once federal jurisdiction has been properly invoked, the Court in England also voiced its "recognition of the role of state courts as the final expositors of state law." England, 375 U.S. at 415, 84 S.Ct. at 465. This same respect for the competence of state courts is evident in the Court's preclusion decisions. Cf. Allen, 449 U.S. at 105, 101 S.Ct. at 420. "Depriving state judgments [on state law issues] of finality ... would violate basic tenets of comity and federalism ...." Kremer v. Chemical Construction Corp., 456 U.S. 461, 478, 102 S.Ct. 1883, 1896, 72 L.Ed.2d 262 (1982)
 
 
 [7]
 The McDonald decision rested on two bases. Arbitration decisions are not subject to the mandate of Sec. 1738; the plain language of the statute includes only "judicial proceedings." The Court also analyzed the propriety of a court-fashioned preclusion rule, and under this rubric it highlighted the distinction between a judicial consideration of an individual's Sec. 1983 claim and an arbitration proceeding brought by a union on behalf of an employee pursuant to a collective bargaining agreement. Here, the district court did not have the benefit of the Supreme Court's unanimous decision in McDonald