**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-3499

_____

JOSEPH ARUANNO,
                              Appellant

v.

GEORGE HAYMAN, JENNIFER VELEZ and ANNE MILGRAM,
                              Appellees

_____

Appeal from the United States District Court
for the District of New Jersey
(No. 06-cv-0296)
District Judge: Honorable William J. Martini

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 27, 2010

_____

Before: MCKEE, Chief Judge, and RENDELL and GARTH, Circuit Judges.
(Opinion Filed: June 14, 2010)

_____

**OPINION**

_____

GARTH, *Circuit Judge*:

Appellant Joseph Aruanno appeals from the District Court's grant of appellees'

motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. We will affirm.

## I.

Joseph Aruanno is a twice-convicted sex offender. In 1994, while in Florida, he exposed himself to two adolescent girls as they were walking home from school and engaged in lewd conduct in their presence. As a result of this incident, Aruanno pled guilty to second-degree lewd conduct, and was sentenced to ten years' probation. J.A. 46. Just two years later, in 1996, Aruanno sexually molested an eight-year-old girl who had been playing on the front steps of her house in Wildwood, New Jersey. A jury convicted Aruanno of second-degree sexual assault, and he was sentenced to ten years in prison, and disqualification from parole for five years. J.A. 47. The Appellate Division of the New Jersey Superior Court affirmed the conviction and sentence. The New Jersey Supreme Court denied certification. State v. Aruanno, 793 A.2d 716 (N.J. 2002) (table op.).

In April 2004, while Aruanno was still serving his prison sentence, the State of New Jersey (hereinfter "the State") filed a petition to involuntarily commit Aruanno pursuant to the New Jersey Sexually Violent Predator Act ("SVPA"), N.J.S.A. § 30:4-27.24 *et seq.* Partially due to Aruanno's repeated insistence that he be appointed new counsel, a hearing on the petition was not held until May 9, 2005, and Aruanno was detained until that time pursuant to a temporary commitment order. J.A. 49-50.

At the commitment hearing, the State presented the testimony of Dr. Vivian

2

Shnaidman, a psychologist.  Dr. Shnaidman testified that Aruanno was a chronic paranoid schizophrenic, but her diagnosis explicitly ruled out diagnoses of exhibitionism and pedophilia.  J.A. 54.  Nevertheless, Dr. Shnaidman opined that Aruanno's schizophrenia, when combined with his previous violent conduct, created a "very high" risk of future violence.  J.A. 55.  In particular, because Aruanno refused to take psychotropic medication to treat his schizophrenia, he would continue to suffer from psychotic delusions which would render sex offender treatment useless.  According to Dr. Shnaidman, Aruanno would have serious difficulty controlling his sexually predatory behavior without undergoing treatment for his schizophrenia.  J.A. 55-56.

Aruanno testified on his own behalf at the hearing.  He denied committing either the Florida or the New Jersey offense, and testified that he believed the State had filed the commitment petition in retribution for his decision to go to trial for the New Jersey offense, rather than accepting a deal to plead guilty.  J.A. 51.  Aruanno was also given the opportunity to present the testimony of his own psychologist, but after meeting with Aruanno, the psychologist reported that he was "unable to render an opinion to a reasonable degree of medical certainty."  J.A. 54.

The state court found that Aruanno suffered from a mental abnormality which created "substantial, significant, severe difficulty controlling his sexually violent behavior," and granted the State's petition for involuntary commitment.  J.A. 58.  Aruanno appealed the order, and the Appellate Division affirmed.  In re Civil

3

Commitment of J.A., 2007 WL 609284 (N.J. Super. Ct. App. Div. 2007).

On January 20, 2006, Aruanno filed a *pro se* complaint and accompanying motion to proceed *in forma pauperis* in the United States District Court for the District of New Jersey.[1] J.A. 18-21. Construed liberally,[2] the complaint asserted that Aruanno's due process rights were violated by the procedure used by the State to commit him. After screening the complaint pursuant to 28 U.S.C. § 1915(e)(2), the District Court granted Aruanno *in forma pauperis* status but dismissed the complaint as frivolous. The District Court reasoned that the sole remedy available to Aruanno was a writ of habeas corpus, and that the claim asserted in his complaint would necessarily imply the invalidity of his confinement, in violation of Heck v. Humphrey, 512 U.S. 477 (1994). J.A. 28-30.

Aruanno appealed, and we vacated the dismissal and remanded for further proceedings. Aruanno v. New Jersey, 215 Fed. App'x 157 (3d Cir. 2007) ("Aruanno I"). Citing Wilkinson v. Dotson, 544 U.S. 74 (2005), we noted that judgment in Aruanno's favor would not necessarily result in his release; rather, success on his due process claims would entitle Aruanno only to a new civil commitment hearing. Aruanno I, 215 Fed. App'x at 158.

In April 2007, the State filed a motion to dismiss the complaint pursuant to Fed. R.

---

[1] The complaint was apparently filed while his appeal from the state court's order of civil commitment was still pending.

[2] "Where the plaintiff is a pro se litigant, the court has an obligation to construe the complaint liberally." Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009).

4

Civ. P. 12(b)(6), arguing that Aruanno's due process rights were not violated by the hearing which resulted in his commitment. On July 29, 2008, the District Court entered an order dismissing Aruanno's complaint without prejudice, holding that 42 U.S.C. § 1983 did not provide a cause of action against the State, and that the State was entitled to immunity under the Eleventh Amendment.

Aruanno then moved for leave to file an amended complaint, which was granted in January 2009. The amended complaint named as defendants the Commissioner of the New Jersey Department of Corrections, George Hayman, the Commissioner of the New Jersey Department of Human Services, Jennifer Velez, and the Attorney General of the State of New Jersey, Anne Milgram, all in their official capacities.

On April 9, 2009, the State filed another Rule 12(b)(6) motion. In an order and letter opinion, the District Court granted the motion to dismiss Aruanno's amended complaint for failure to state a claim.[3] J.A. 3-10. Aruanno timely appealed the dismissal.[4]

## II.

Aruanno raises three issues on appeal: (1) whether the District Court failed to

---

[3]The State contends that the District Court lacked jurisdiction over the amended complaint because it "related back" to the original complaint. We reject this argument. See Bowers v. NCAA, 346 F.3d 402, 418 (3d Cir. 2003) and Callahan v. City of Philadelphia, 207 F.3d 668, 670 (3d Cir. 2000) (citing Edelman v. Jordan, 415 U.S. 651, 664-70 (1974)). Nor is Aruanno's §1983 claim, which relates back to the date of his original pleading, time-barred. See Hodge v. U.S., 554 F.3d 372, 377 (3d Cir. 2009).

[4]We have jurisdiction over Aruanno's appeal pursuant to 28 U.S.C. § 1291.

follow the law of the case; (2) whether the District Court improperly relied upon the decisions of New Jersey state courts; and (3) whether the procedure used to commit Aruanno under the SVPA violated Aruanno's constitutional right to due process.

*A. Law of the Case*

Aruanno argues that in granting the New Jersey officials' Rule 12(b)(6) motion, the District Court failed to comply with the law of the case.[5] "The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Feesers, Inc. v. Michael Foods, Inc., 591 F.3d 191, 207 (3d Cir. 2010) (quoting Arizona v. California, 460 U.S. 605, 618 (1983)) (alterations and internal quotation marks omitted). Aruanno points to our February 2007 decision, Aruanno I, in which we reversed the District Court's dismissal of Aruanno's complaint, as necessarily implying the invalidity of his confinement.

However, contrary to Aruanno's assertion, Aruanno I did not hold that Aruanno had in fact pled legally viable claims. Rather, it noted that Aruanno's claims, if successful, would entitle him to a new civil commitment hearing, but not necessarily to release. Id. at 158. In other words, Aruanno I did not decide the issues which were sent back to the District Court on remand, and which are now pending before us on appeal.

---

[5]We exercise plenary review over the question of whether the District Court properly interpreted the law of the case. Cooper Distrib. Co. v. Amana Refrigeration, Inc., 180 F.3d 542, 546 (3d Cir. 1999).

6

The "law of the case" doctrine is therefore inapposite.

### B. Improper Reliance on State Law

Aruanno contends that the District Court relied so heavily upon decisions issued by New Jersey's state courts that it effectively abdicated its responsibility as the "primary and final arbiter of federal rights."[6] Kovats v. Rutgers, 749 F.2d 1041, 1046 n.5 (3d Cir. 1984). Aruanno is incorrect. The District Court made appropriate references to state-court decisions in order to explain the judicial interpretation and application of the statute whose constitutionality the Court was evaluating—the SVPA. Moreover, the District Court was entitled to look to state-court decisions, even on federal constitutional issues, and rely on them for their persuasive value. See Charles W. v. Maul, 214 F.3d 350, 357 (2d Cir. 2000) ("State court decisions . . . are relevant and often persuasive.").

### C. Constitutionality of the SVPA Commitment Procedure

Aruanno argues that since the procedure used by the State to civilly commit him pursuant to the SVPA violated his constitutional right to due process, the District Court erred in dismissing his complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[7]

---

[6]The question of whether the District Court improperly relied upon the decisions of New Jersey courts is a matter of law over which we exercise plenary review. See United States v. Stinson, 592 F.3d 460, 462 n.1 (3d Cir. 2010).

[7]We exercise plenary review over the District Court's decision to dismiss Aruanno's complaint under Rule 12(b)(6), Capogrosso v. Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir. 2009), accepting as true the facts as pled in the complaint, and drawing all reasonable inferences in Aruanno's favor. Odd v. Malone, 538 F.3d 202, 205

According to Aruanno, the process afforded to him under the SVPA was constitutionally deficient in four respects: (1) the State was permitted to obtain an *ex parte* temporary order of detention against Aruanno without appointing counsel to advise him and without holding a hearing at which Aruanno could contest the detention; (2) the State was permitted to use information elicited from Aruanno to support its case for Aruanno's commitment, even though Aruanno had not been warned or given an opportunity to consult with or be represented by counsel; (3) the State was only required to satisfy a "clear and convincing" standard of evidence in order to obtain Aruanno's commitment, rather than the more demanding "beyond a reasonable doubt" standard; and (4) the State was permitted to civilly commit Aruanno without the protections afforded by a jury trial.

The validity of Aruanno's constitutional claims turns on whether the SVPA's commitment hearing process is truly civil and regulatory in nature, or whether it is actually a criminal proceeding masquerading as civil commitment. We conclude that the state action prescribed by the SVPA is genuinely civil in nature, Aruanno's claims regarding the act's constitutionality are unavailing, and the District Court did not err in dismissing them pursuant to Rule 12(b)(6).[8]

(3d Cir. 2008).

[8] In fact, the SVPA is a civil, not criminal, statute. The SVPA allows a court to authorize temporary commitment based on an *ex parte* submission made by the Attorney General, N.J.S.A. § 30:4-27.28(g), but requires that any person so committed be afforded

## 1. SVPA: Civil or Criminal?

In determining whether the SVPA should be properly categorized civil or criminal in nature, we are guided by the Supreme Court's analysis in <u>Kansas v. Hendricks</u>, 521 U.S. 346 (1997). In <u>Hendricks</u>, the Supreme Court considered various constitutional challenges to a statute enacted by the State of Kansas which provided for the involuntary confinement of persons classified as "sexually violent predators." Kan. Stat. Ann. § 59-29a01 <u>et seq</u>. (2009).[9]

The <u>Hendricks</u> Court began its analysis of the Kansas statute at issue (hereinafter

---

a hearing within twenty days of the commitment order. N.J.S.A. § 30:4-27.29(a). The maximum length of commitment that may result before a hearing and the participation of the offender/defendant is therefore twenty days.

Moreover, in the case of an inmate scheduled for release, like Aruanno, the temporary commitment is accomplished by the submission of two statements prepared by medical professionals, one of whom must be a psychiatrist, certifying that he is a sexually violent predator in need of involuntary commitment. N.J.S.A. § 30:4-27.28(c).

Indeed, <u>In re Commitment of M.M.</u>, 894 A.2d 1158 (N.J. Super. Ct. App. Div. 2006), cited by the dissent, is largely inapposite and in any event acknowledges that the twenty-day statutory period is constitutionally reasonable. <u>Vitek v. Jones</u>, 445 U.S. 480 (1980), is not apposite either. <u>Vitek</u> merely held that a prisoner is entitled to due process protections before being transferred to a psychiatric facility.

As noted in text, we have followed <u>Kansas v. Hendricks</u>, 521 U.S. 346 (1997), holding that the Kansas SVPA does not violate constitutional guarantees of due process, and we have therefore concluded that the New Jersey SVPA is similarly constitutional.

[9]The <u>Hendricks</u> analysis is of particular significance to the instant case, since New Jersey's SVPA "is virtually identical to the language of the Kansas SVPA challenged in <u>Hendricks</u> . . . ." <u>In re Commitment of W.Z.</u>, 801 A.2d 205, 211 (N.J. 2002); <u>compare</u> N.J.S.A. § 30:4-27.24 <u>et seq.</u> <u>with</u> Kan. Stat. Ann. § 59-29a01 <u>et seq.</u>

9

"K-SVPA") with an examination of "whether the legislature meant the statute to establish 'civil' proceedings." 521 U.S. at 361. The Court observed the K-SVPA's placement in the Kansas probate code rather than the criminal code, and the Kansas legislature's own reference to the legislation as creating a "civil commitment procedure." Id. The Court suggested that the statute served neither of the two primary objectives of criminal punishment – not retribution because the statute did not "affix culpability for prior criminal conduct" or require a finding of scienter – and not deterrence because by definition, committees suffered from "mental abnormality" which prevented them from controlling their behavior. Id. at 362.

Next, the Court rejected Hendricks' contentions that the potentially indefinite length of his commitment and the presence of certain procedural protections more typically found in criminal statutes rendered the proceedings essentially criminal. Id. at 363-65. Finally, the Court was unpersuaded by Hendricks' argument that the statute's failure to provide treatment for committed offenders revealed its criminal character.

The Court concluded:

> Where the State has disavowed any punitive intent; limited confinement to a small segment of particularly dangerous individuals; provided strict procedural safeguards; directed that confined persons be segregated from the general prison population and afforded the same status as others who have been civilly committed; recommended treatment if such is possible; and permitted immediate release upon a showing that the individual is no longer dangerous or mentally impaired, we cannot say that it acted with punitive intent. We therefore hold that the Act does not establish criminal proceedings and that involuntary confinement under the Act is not punitive.

10

Id. at 368-69.

Like the K-SVPA, the SVPA is not part of New Jersey's criminal code,[10] and the language of the statute describes its procedure as a civil commitment process which recognizes "the need for commitment of those sexually violent predators who pose a danger to others should they be returned to society." N.J.S.A. § 30:4-27.25(c). Although this label is not entirely dispositive, it places the burden on Aruanno to provide "the clearest proof that the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil." Hendricks, 521 U.S. at 361 (quoting United States v. Ward, 448 U.S. 242, 248-49 (1980)) (alterations and internal quotations omitted).

Aruanno cannot meet this burden. Although facilities housing committed sex offenders are managed by the Department of Corrections, the SVPA requires that offenders subject to civil commitment be housed separately from offenders under the general supervision of the Department of Corrections. N.J.S.A. § 30:4-27.34(a). The SVPA also requires that the Department of Human Services provide treatment that is "appropriately tailored to address the specific needs of sexually violent predators." N.J.S.A. § 30:4-27.34(b).

Finally, like the K-SVPA, the SVPA provides for reevaluation of involuntarily committed persons every year. N.J.S.A. § 30:4-27.35. Committees may also be

_____

[10] Title 30 of the New Jersey Statutes is captioned "Institutions and Agencies."

11

authorized by members of the treatment staff to file a petition for discharge from involuntary commitment. N.J.S.A. § 30:4-27.36.

Under the framework established in Hendricks, we hold that the New Jersey SVPA serves an essentially regulatory civil function. Having thus established the proper context in which to evaluate the constitutionality of the SVPA, we now proceed to analyze the merits of Aruanno's four challenges to its procedures.

## 2. *Ex Parte* Temporary Detention Order

Aruanno argues that his rights were violated when the court entered a temporary detention order pending his final commitment hearing without first appointing counsel for Aruanno, and without holding a hearing in which Aruanno might challenge the temporary detention.

The SVPA provides that the subject of a temporary commitment order is entitled to a hearing within twenty days of entry of the order, and that the person subject to commitment must be represented by counsel at that hearing. N.J.S.A. § 30:4-27.29; see Greenfield v. New Jersey Dept. of Corrections, 888 A.2d 507, 510 (N.J. Super. Ct. App. Div. 2006). Aruanno does not cite any authority for the proposition that he is entitled to an earlier hearing, notice of the temporary commitment order, or to counsel before the 20-day preliminary hearing. As the New Jersey Superior Court has reasoned: "The twenty-day period for pre-hearing detention is deemed constitutionally reasonable because of the urgency at its inception and in order to permit time for preparations essential to a fair and

meaningful hearing. Those essential preparations include testing and observation adequate to permit a diagnosis, notice to the patient, assignment of counsel, opportunity to prepare the case and court scheduling." In re Commitment of M.M., 894 A.2d 1158, 1167 (N.J. Super. Ct. App. Div. 2006) (internal citation omitted).

Furthermore, we have previously noted the Supreme Court's implicit rejection of a constitutional challenge to a statute which permitted emergency confinement for fifteen days without prior notice or a hearing. See Reese v. Nelson, 598 F.2d 822, 826-27 (3d Cir. 1979) (citing Briggs v. Arafeh, 411 U.S. 911 (1973)). Accordingly, this claim fails.

### 3. Use of Information Elicited from Aruanno

Aruanno complains that his constitutional rights were violated when the State used information elicited from him to support its case for Aruanno's commitment, even though Aruanno had not been warned that the information could be used against him at the commitment hearing, and he had not been given an opportunity to consult with or be represented by counsel before the information was elicited. Though Aruanno's brief does not expressly reference the Fifth Amendment, the substance of his argument indicates that he believes the SVPA violates his constitutional right against self-incrimination, and we will analyze his claim on that basis.

The Fifth Amendment's Self-Incrimination Clause, by its own terms, applies only to criminal cases. See U.S. Const. amdt. V. In Allen v. Illinois, 478 U.S. 364 (1986), the Supreme Court considered the very issue Aruanno raises here: whether the right against

13

self-incrimination applies to civil commitment proceedings. The Court held that the right against self-incrimination only applies to protect individuals subject to commitment proceedings labeled as "civil" by a state if "the statutory scheme is so punitive either in purpose or effect as to negate the State's intention that the proceeding be civil . . . ." Id. at 369 (quoting United States v. Ward, 448 U.S. 242, 249 (1980)) (alterations omitted). Accordingly, this claim fails.

### 4. "Clear and Convincing" Standard of Proof

Aruanno argues that the SVPA is constitutionally flawed because it permits the State to involuntarily commit sex offenders upon a showing of clear and convincing evidence that the offender is a "sexually violent predator." N.J.S.A. § 30:4-27.32. According to Aruanno, the constitutional right to due process requires that the State prove the fitness of offenders for commitment beyond a reasonable doubt.

Aruanno's position is flatly inconsistent with Supreme Court precedent governing traditional civil commitment statutes, which holds that a State need only prove the dangerousness of a potential committee by clear and convincing evidence. See Foucha v. Louisiana, 504 U.S. 71, 80 (1992); Addington v. Texas, 441 U.S. 418, 433 (1979). Indeed, in Addington the Supreme Court considered and expressly rejected the argument that the "beyond the reasonable doubt" standard applicable to criminal cases governs in civil commitment proceedings. Id. at 427-31. Accordingly, this claim fails.

### 5. Jury Trial

14

Aruanno argues that the SVPA violates the requirements of constitutional due process in that it fails to require that a jury trial be held in order for the State to effect commitment.

Although Aruanno's brief insists that a sex offender must be afforded the right to a jury trial before his involuntary commitment, many of our sister circuits have held to the contrary. For example, in <u>United States v. Carta</u>, 592 F.3d 34 (1st Cir. 2010), the First Circuit noted that "the claim to a jury trial right in civil commitments has been rejected under not only the Due Process Clause, but also the Sixth and Seventh Amendments." <u>Id.</u> at 43 (internal citations omitted). <u>Accord</u> <u>Poole v. Goodno</u>, 335 F.3d 705, 710-11 (8th Cir. 2003); <u>United States v. Sahhar</u>, 917 F.2d 1197, 1205-07 (9th Cir.1990).[11] <u>Cf.</u> <u>Hernandez-Carrera v. Carlson</u>, 547 F.3d 1237, 1256 (10th Cir. 2008) (upholding administrative interpretation of statute regarding detention of certain aliens that did not provide for right to jury trial).

The SVPA serves a regulatory—rather than penal—purpose, because it seeks to protect the public from possible future harm rather than to punish for criminal acts committed in the past. We therefore join our sister circuits in holding that the

---

[11]It should be noted that the federal analogue authorizing the commitment of "sexually dangerous persons" does not provide for a jury trial. <u>See</u> 18 U.S.C. § 4248; <u>United States v. Veltman</u>, 9 F.3d 718, 721 (8th Cir. 1993) (observing this feature of the federal statute). We further note that the Supreme Court has recently affirmed Congress' authority to enact § 4248 under the Necessary and Proper Clause, although the decision did not address the claims asserted by Aruanno here. <u>See</u> <u>United States v. Comstock</u>, – U.S. – , – S.Ct. – , 2010 WL 1946729 (May 17, 2010).

15

Constitution does not demand that a jury trial be provided before an individual is involuntarily committed by the state as a sexually dangerous person.

**III.**

We conclude that the District Court did not err in granting the State's Rule 12(b)(6) motion to dismiss Aruanno's complaint. We will affirm.

McKee, J., concurring in part and dissenting in part.

I agree with my colleagues' rejection of all of Aruanno's claims with the single exception of his claim that he was denied procedural due process because he was not given notice prior to his commitment. Aruanno alleges that "the ex parte order of temporary detention was obtained without notice to plaintiff . . . at a time when plaintiff was in the custody of the State of New Jersey, when no good cause or reasonable justification existed that would make it unreasonable or impractical to provide plaintiff with advance notice." (J.A. 91).

Our review of the Defendants' motion to dismiss is plenary, and we must accept all factual allegations and the inferences that can be drawn from them as true. *Nami v. Favuer*, 82 F.3d 63, 65 (3d Cir. 1996). For the reasons set forth below, I believe that Aruanno's preliminary commitment pursuant to the S.V.P. without prior notice is a violation of due process absent extenuating circumstances that are not present here.

**I.**

At the outset, I think it important to note that my colleagues place far too much emphasis on the fact that Aruanno's commitment was a civil proceeding. *See* Maj. Op. at 8 to 11. In *Vitek v. Jones*, 445 U.S. 480 (1980), the Supreme Court had to determine "whether the involuntary transfer of a Nebraska state prisoner to a mental hospital implicates a liberty interest that is protected by the Due Process Clause." *Id*., at 488. In finding such a protected liberty interest under the Due Process Clause the Court explained: "[i]f the state

1

grants a prisoner a right or expectation that adverse action will not be taken against him except upon the occurrence of specified behavior, the determination of whether such behavior has occurred becomes critical, and the minimum requirements of procedural due process are appropriate." *Id.*, at 490 (internal quotations omitted). The Supreme Court thus agreed with the district court's determination that the transfer "should not be imposed without the opportunity for notice and an adequate hearing." *Id*. At 491.

I agree with the majority's conclusion that Aruanno's transfer was civil in nature, just as the transfer in *Vitek* was. It is nevertheless clear that, absent some emergency justifying a post-deprivation hearing, due process requires notice prior to even a temporary involuntary commitment. "The notice requirement . . . no more than recognizes that notice is central to afford the prisoner an opportunity to . . . understand what is happening to him." *Id*. at 496. The risk of error in making commitment determinations, particularly where medicine and psychiatry are involved, warrants appropriate procedural safeguards against error. *Id*.

## II.

Thus, absent exigent circumstances, no justification exists for denying Aruanno his due process right to notice prior to his involuntary commitment under the S.V.P. In affirming the district court's dismissal here, the majority relies in part on *Reese v. Nelson*, 598 F.2d 822 (3d Cir. 1979) and the New Jersey Superior Court's analysis of N.J.S.A. § 30:4-27.32. However, *Reese* can readily be distinguished from the circumstances here. Reese had made several credible threats against the government. He even went as telling authorities the

2

precise date on which he was going to detonate a bomb. Nevertheless, he was still afforded prior notice (albeit only 1 hour), and a hearing before commitment was ordered. No such emergency has even been alleged here. The distinction is even more remarkable because Reese had been released to out-patient treatment and was at large in the community at the time of his commitment. Aruanno was securely confined as an inmate in a New Jersey prison facility.

In *In re Commitment of M.G.*, 751 A. 2d 1101 (N.J. Super. App. Div. 2000) the New Jersey Superior Court concluded that unless exigent circumstances exist, procedural due process requires that persons who are subject to commitment proceedings receive notice and a hearing *prior to* commitment. There is only a very limited exception that:

> applies in *emergency* situations, in which the individual is at large in the community or in custody and is believed to be an *immediate* danger to self, others, or property. The temporal nature of the individual's immediate condition is the critical element in assessing due process considerations, [and] immediate action without notice based on emergent circumstances is the exception rather than the rule.

751 A. 2d at 1107. (Emphasis in original).

Aruanno was initially ordered to be temporarily committed under the provisions of the SVPA. My colleagues stress that "[t]he SVPA provides that the subject of a temporary commitment order is entitled to a hearing within twenty days of entry of the order, . . ." *See* Maj. Op. at 12. However, the Supreme Court of New Jersey has held that a statutory provision requiring even earlier notice did not provide adequate due process.

In *In H.E.S. v. J.C.S.,* 815 A.2d 405 (N.J. 2003), the New Jersey Supreme Court

3

assessed the validity of a provision of New Jersey's Domestic Violence Act that required a "final hearing . . . 'within 10 days of . . . filing a complaint,'" following imposition of ex parte restraints, but allowed for a continuance "where fundamental fairness dictates allowing a defendant additional time." *Id*., at 413. In assessing the constitutionality of that provision, the Court stated: "Indeed, to the extent that compliance with the ten-day provision precludes meaningful notice and an opportunity to defend, the provision must yield to due process." *Id*. (Citing *In re Commitment of M.G*.).

It is clear that post-deprivation hearings are appropriate and constitutionally permissible in emergency situations where there is no realistic opportunity to afford prior notice to one whom the state wants to involuntarily commit. That is simply not the situation here, and no one is arguing that it is. The majority claims that Aruanno "does not cite any authority for the proposition that he is entitled to an earlier hearing, notice of the temporary commitment order, or to counsel before the 20-day preliminary hearing." *See* Maj. Op. at 12. However, we are reviewing a Rule 12(b)(6) dismissal for failure to state a claim. His complaint clearly does state such a claim. My colleagues preface the aforementioned quote with a citation to *Greenfield v New Jersey Dept. Of Corrections*, 888 A.2d 507 (N.J. Super Ct. App. Div. 2006). That case supports Aruanno's claim, not my colleagues' rejection of it.

In *Greenfield*, an inmate challenged the denial of an opportunity to review the report that he anticipated the state Attorney General would submit upon the expiration of his

4

sentence as the inmate believed he would then be detained pursuant to the SVPA. He also asked to meet with the committee (the IRC) that determined if referral for subsequent commitment under the SVPA was appropriate. The request was denied, and he appealed the denial of his request by the Department of Corrections. Thus, the court was only reviewing the "defendant's claim of a right to be heard when the IRC first evaluates him for *possible* referral to the Attorney General as a candidate for civil commitment." 888 A.2d at 510. (Emphasis added). Moreover, in affirming the denial of the inmate's request, the court was careful to note the limited scope of its ruling:

> We emphasize the scope of this appeal is quite narrow. It focuses on plaintiff's assertion that the denial of his request constitutes a due process deprivation. There is no doubt that due process requires the opportunity to be heard 'at a meaningful time and in a meaningful manner.

888 A.2d at 510 (internal quotation marks and citations omitted). Aruanno is not asking to meet with the evaluation committee, to review its report, or be present when he is first evaluated for referral under the SVPA. He is merely asking for advance notice and an opportunity to be heard before he is committed. That is a basic component of the fundamental fairness guaranteed under the Due Process Clause.

*In re Commitment of M.M.*, 894 A.2d 1158 (N.J. Super. Ct. App. Div. 2006) which the majority also cites, *see* Maj.Op. At 12, is not to the contrary. There, the plaintiff appealed from an order that continued her temporary commitment beyond the twenty-day period provided for under the statute. She alleged that the government had not established "exceptional circumstances and good cause justifying the delay or adequate proof that she

5

was a person in need of involuntary commitment." *Id*., at 1163. The court there, did state that: "[t]he twenty-day period for pre-hearing detention is deemed constitutionally reasonable because of the urgency at its inception and in order to permit time for preparations essential to a fair and meaningful hearing. . .." as the majority notes at page 12 of its opinion. However, my colleagues fail to note that the court struck down the preliminary order challenged in *M.M.* for the very same reasons that underlie Aruanno's challenge to his lack of notice.

A more complete recitation of quotations from the decision in *M.M.* removes any doubt about the unconstitutionality of preliminary commitment in the absence of an adequate showing of necessity. The court in *M.M.* explained: "[b]ecause the patient's liberty is at stake, meticulous adherence to statutory and constitutional criteria is required." 894 A.2d at 1167 (internal quotation marks and citations omitted). The court observed that even though the law allowed for commitment without a prior hearing based upon a showing of probable cause, "it also recognizes that it is exceptional to deprive a person of liberty prior to a hearing on the need for such extraordinary restraint. . . . Our cases recognize that this pre-hearing confinement is justified only because of the urgency of the threat of serious harm . . .." *Id*. (Internal citations omitted). It was only at that point in its discussion that the court made the statement relied that the majority cites. Thereafter, the court cautioned that such pre-hearing deprivation is justified only by "exceptional circumstances," and "good cause" and the court *held* that "trial courts must take a narrow view of the circumstances that qualify as

6

"exceptional' and establish "good cause.'". *Id*., at 1168. The court reversed the order allowing the extension of the plaintiff's preliminary detention because the judge who entered the order "did not even consider whether there were exceptional circumstances and good cause warranting extensions of the statutory period." *Id*., at 1169. As I have already noted, neither exceptional circumstances nor good cause are even alleged here.

Moreover, it is no small irony that M.M. at least had the benefit of some process before the court extended the statutory deadline for a hearing on her civil commitment. Given Aruanno's allegations, we must assume that he did not have any process at all. I therefore can not agree that Aruanno's preliminary commitment comports with "'meticulous adherence to [the] . . . 'constitutional criteria' [that] is required" when "the patient's liberty is at stake." *Id*., at 1167.